558 A.2d 760

**Richard E. KRAMER**

v.

**Michael A. LEVITT.**

**No. 1367, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 8, 1989.

576

Benjamin Lipsitz, Baltimore, for appellant.

Argued before KARWACKI, WENNER and POLLITT, JJ.

KARWACKI, Judge.

The appellee, Michael A. Levitt, individually and trading as Levitt's Investments, brought suit in the Circuit Court for Baltimore County against Howard E. Mirsky and Richard E. Kramer, the appellant, individually and trading as Commerce Credit, a partnership, and 20–20 Ltd., a corporation in which Mirsky and Kramer were principals. Appellee alleged that during the years 1980 through 1983 the individual defendants, acting as mortgage brokers under the style of Commerce Credit or 20–20 Ltd., persuaded him to invest money in loans which they had arranged for their customers. The defendants were to collect the monthly payments from customers, deduct a charge for handling, and remit the balance to the appellee for each loan. Kramer, a member of the Maryland Bar, prepared the deeds of trust securing the loans and conducted the settlements on the transactions.

Pursuant to this arrangement, appellee funded six secured loans in the aggregate principal amount of $174,100. Mirsky and Kramer (and in one instance Mirsky alone) were named the trustees in the deeds executed by the borrowers to secure these loans. In September of 1983, Mirsky and Kramer visited the appellee and advised him that they had misappropriated certain funds which they had collected on his behalf on some of the loans. They explained their defalcation on their need for money because of business reversals and assured him that he would eventually be paid in full. Appellee subsequently learned that all six of the loans that he had funded in the aggregate principal amount of $174,100 had been repaid by the borrowers to Mirsky and Kramer who had appropriated the money to their own use.

In his complaint filed on November 5, 1984, appellee asserted claims for breach of contract and conversion. He sought compensatory and punitive damages.[1] Mirsky failed to plead to the complaint and a default judgment was entered against him on June 3, 1985, for $116,816.68 in compensatory damages and $10,000 in punitive damages. The appellant, in answering the amended complaint, generally denied liability in addition to raising certain specific defenses.

A jury trial was held on May 10 and 11, 1988, before Judge J. William Hinkel. At the end of the appellee's case, Judge Hinkel granted appellee's motion for judgment as to appellant's liability. The issue of damages was sent to the jury. The jury returned verdicts of $198,539.50 in compensatory damages and $162,500.00 in punitive damages, plus interest and costs. The court entered judgments on those verdicts against appellant and 20–20 Ltd.[2] This appeal ensued. Appellant poses four questions for our review:

1. Whether the trial judge erred in rulings regarding the effect of Kramer's having declined pretrial discovery on Fifth Amendment grounds.
2. Whether the trial court erred in withdrawing the issue of liability from the jury.
3. Whether the trial judge erred in submitting the issue of punitive damages to the jury.
4. Whether the trial court erred in denying Kramer's motions challenging the amended complaint, the more definite statement thereof and the addendum thereto as being grossly duplicitous.

1.

Appellant responded to appellee's request for admissions pursuant to Rule 2–424(a) by stating:

---

1. Appellee filed an amended complaint on January 3, 1986, which alleged six counts of breach of contract and six counts of conversion.

2. 20–20 Ltd., although served with process, never appeared in the action. No appeal from the judgment against it has been filed.

[Appellant] objects to said Request for Admissions and to each and every matter if [sic] which an admission is therein requested because said Request for Admissions and said matters and each of them place him in a position where any response which he undertakes to make thereto may tend to incriminate him. Hence, to call upon him to respond to said Request for Admissions and said matters and each of them is to violate his constitutional rights, including those under the Self–Incrimination Clause of the Fifth Amendment to the Constitution of the United States [3] and Article 22 of the Maryland Declaration of Rights.[4]

Appellant filed similar responses objecting to appellee's interrogatories [5] and motions to produce documents.[6] Appellee's motion to compel this discovery over appellant's objections on grounds of self-incrimination was denied after a hearing by Judge Leonard S. Jacobson.

At trial appellee's counsel asked that he be able to read appellee's requests for admissions to the jury as having been admitted by the appellant. He argued that since appellant neither admitted nor denied the admissions, Rule

---

**3.** The Fifth Amendment provides in part:
"No person ...shall be compelled in any criminal proceeding to be a witness against himself." The Fifth Amendment privilege against self-incrimination was deemed incorporated into the Fourteenth Amendment, and thus made applicable to the states in 1964. *Malloy v. Hogan,* 378 U.S. 1, 3, 84 S.Ct. 1489, 1490, 12 L.Ed.2d 653 (1964).

**4.** Article 22 provides "[t]hat no man ought to be compelled to give evidence against himself in a criminal case." It is well settled that this Article is in *pari materia* with the privilege against compelled self-incrimination protected by the Fifth Amendment to the federal constitution and that it should receive a like construction. *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021 (1979).

**5.** Appellee's interrogatories pursuant to Rule 2–421 sought specific information relative to the six loan transactions which formed the bases for the action. The last of those interrogatories required appellant to "Name all persons who have personal knowledge of any facts material to this case."

**6.** Pursuant to Rule 2–422 appellee sought discovery of various documents relevant to the six loan transactions involved in this litigation.

2-424(b) required that they shall be deemed admitted and conclusively established. Over appellant's objection Judge Hinkel agreed, stating:

The assertion of the privilege against self-incrimination is available. And obviously Judge Jacobson did not compel a party to respond after having asserted that right. That gives the defendant in this case the protection afforded by the Consitutional [sic]. But it does not protect him from the rules of civil procedure which provide that where an admission is requested and it's neither admitted nor denied it shall be taken as admitted. He has received his constitutional protection, yet by having failed to respond they shall be deemed as admitted. And that's my ruling.

The trial judge said further:

I am not prepared to state that he [Kramer] cannot produce any evidence, but I am prepared to rule that he cannot offer evidence that would contradict the admissions that I have just ruled upon. And I am not going to bar him from taking the stand if he wishes to take the stand and testify. But not permit him to testify contrary to the admissions that he's already made.

Appellee's counsel then proceeded to read the requests for admissions to the jury. He stated:

Members of the jury, I am about to read the requests for admissions. And these are admitted as being true by the Defendant, Richard Kramer. You were a partner with Howard E. Mirsky, trading as Commerce Credit, a Maryland General Partnership; that's admitted. You were a principal in 20–20 Limited, a Maryland Corporation; that's admitted. You were in business as a mortgage broker and as such received commissions, fees in connection with loans; that's admitted.

That you held yourself out to the general public as mortgage brokers, by either advertising or soliciting investors; that you or Howard E. Mirsky solicited Michael A. Levitt as an investor; that you guaranteed personally the repayment of all loans; that you entered into a

contract with Michael A. Levitt and as such Levitt advanced monies to you; that you further contracted to handle legal matters in connection with the loans, you advised the Plaintiff on each transaction; you received monies for the plaintiff and were to deposit them in your escrow account; that you received full payoffs on loans mentioned in Paragraph 7 of the complaint; that you made payments to the Plaintiff on these loans until September the 19th, 1983 despite having received full payoffs; that you did not record Deeds of Trust on the Hansson, LaBerge, Thomas and Webb loans; that you received or deducted funds for transfer tax for Hansson, LaBerge, Thomas and Webb loans.

. . . . .

That you stole, defalcated, appropriated or converted funds entrusted to you while you were a member of the Maryland Bar; that you have not repaid any of the monies—

. . . . .

That you have not repaid any of the monies which you took, stole or misappropriated or defalcated; that the monies of Michael A. Levitt were used by you to purchase stocks, personal property, bonds, securities or to gamble; that you have failed to return all the monies mentioned in Paragraph 7 of the complaint; that you have deposited monies belonging to Levitt in accounts in banks in names other than your own or in accounts or numbers in foreign banks wherein you have an interest; that you co-mingled Levitt's monies or monies due Levitt with that of your own; that you failed to give Levitt an accounting of funds for which you were escrowee or trustee or for [sic] which you were holding.

In addition to offering that evidence, appellee testified and called four witnesses to establish that each of the six loans in question had been fully repaid by the borrowers to appellant and Mirsky, as trustees for the appellee, and that appellant and Mirsky had appropriated those receipts. Mir-

sky was also called as a witness by appellee but refused to answer any questions on self-incrimination grounds.

After resting his case, appellee moved *in limine* that appellant be prevented from calling any witnesses to testify to the transactions in issue because of his refusal to name persons possessing personal knowledge of those transactions in response to appellee's interrogatories. The only witness that appellant wished to call was his father who, he proffered, would have testified that appellant was absent from the Baltimore area from "the late summer of 1982 until July or thereabouts in 1983." His stated purpose for calling that witness was "to show [appellant] wasn't around for a period of time during which many of these transactions testified to apparently were supposed to have occurred." The motion *in limine* was granted.

■ Appellant argues that the trial judge erred in allowing appellee's requests for admissions to be deemed admitted and read to the jury. We agree and explain.

Though by its terms applicable only in criminal proceedings, the Fifth Amendment privilege against self-incrimination has long been held to be properly asserted by parties or witnesses in civil proceedings. *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). The privilege may be invoked by anyone whose statements could incriminate him, either by directly admitting the commission of illegal acts or by relating information which would "furnish a link in the chain of evidence needed to prosecute the claimant." *Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951). The privilege protects persons "against being forced to make incriminating disclosures at any stage of the proceeding if they could not be compelled to make such disclosures as a witness at trial." *National Acceptance Co. of America v. Bathalter,* 705 F.2d 924, 927 (7th Cir.1983). It therefore applies not only at trial, but at the discovery stage as well. *See*

*Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973); *United States v. Kordel,* 397 U.S. 1, 7, 90 S.Ct. 763, 766, 25 L.Ed.2d 1 (1970).

In the case *sub judice,* although at the time appellant was served with the requests for admissions, he was not under indictment or faced with a criminal prosecution [7] or disciplinary action,[8] he could reasonably fear that the information gained from his admissions might furnish a basis for such charges. Judge Jacobson denied appellee's motion to compel discovery thereby acknowledging appellant's right to assert his Fifth Amendment privilege.[9] At trial, however, Judge Hinkel interpreted appellant's assertion of his privilege as noncompliance with Rule 2–424(b) which provides:

---

**7.** There was no suggestion at trial that appellant's asserted risk of incrimination was unwarranted, or that his prosecution might be barred by limitations or for any other reason. *See* Gilbert & Moylan, *Maryland Criminal Law: Practice and Procedure,* § 38.10 (1983).

**8.** Appellant is a member of the Maryland Bar. In *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), the Supreme Court held that the Fifth Amendment privilege is applicable to avoid self-incrimination in disciplinary proceedings. *Cf. Andresen v. Bar Ass'n of Montgomery County,* 269 Md. 313, 323, 305 A.2d 845 (1973), *cert. denied,* 414 U.S. 1065, 94 S.Ct. 572, 38 L.Ed.2d 470 (1973).

**9.** Rule 2–424(d) states in pertinent part "...Any admission made by a party under this Rule is for the purpose of the pending action only and is not an admission for any other purpose, nor may it be used against that party in any other proceeding." This Maryland Rule is textually identical to Federal Rule of Civil Procedure (FRCP) 36(b). We may therefore review interpretations of that rule for guidance. *Bartell v. Bartell,* 278 Md. 12, 18, 357 A.2d 343 (1976). In discussing FRCP 36(b) Wright & Miller explain:

> At one time there were casual expressions in some cases that the privilege against self-incrimination did not apply to requests for admissions since Rule 36(b) provides that admissions under that rule may not be used in other proceeding[s]. This overlooked the possibility that the admission, though not usable itself, might be a link in an incriminating chain or provide a lead to other usable evidence. Thus, that older view is now regarded as "clearly untenable" and the privilege recognized under Rule 36. (Footnotes omitted.)

8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2018 at 142 (1970, 1988 Supp.). *See also FDIC v. Logsdon,* 18 F.R.D. 57, 58 (D.C.Ky.1955).

Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed files a response signed by the party or the party's attorney. As to each matter of which an admission is requested, *the response shall specify an objection, or shall admit or deny the matter,* or shall set forth in detail the reason why the respondent cannot truthfully admit or deny it. *The reasons for any objection shall be stated.* A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and deny or qualify the remainder. A respondent may not give lack of information or knowledge as a reason for failure to admit or deny unless the respondent states that after reasonable inquiry the information known or readily obtainable by the respondent is insufficient to enable the respondent to admit or deny. A party who considers that a matter of which an admission is requested presents a genuine issue for trial may not, on that ground alone, object to the request but the party may, subject to the provisions of section (e) of this Rule, deny the matter or set forth reasons for not being able to admit or deny it. (Emphasis supplied.)

The trial judge ruled that since appellant did not admit or deny the requests for admissions presented by appellee, those statements were deemed admitted. We disagree.

Rule 2–424(b) clearly states that in responding to a request for admissions, a party must specify an objection, admit or deny the matter. Appellant did in fact comply with this directive. Specifically, appellant *objected* to the requests for admissions and asserted his Fifth Amendment privilege as the *reason* for his objection.

Furthermore, "the Fifth Amendment protection against compelled self-incrimination would be meaningless and hol-

low if the objective sought through the asking of the question could be achieved as well by a refusal to answer as by the answer itself." *Mayo v. Ford,* 184 A.2d 38, 40 (D.C.Mun.App.1962), *rev'd on other grounds,* 191 A.2d 603 (D.C.App.1963). Thus, appellant's objection and refusal to respond to the requests for admissions could not be considered evidence of the truth of the matters stated therein. *Id.* The issue then becomes: what effect does appellant's claim of the Fifth Amendment privilege have on the subsequent litigation of the civil case against him?

In *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court addressed the question of whether a prison inmate's refusal to testify at a prison disciplinary hearing could be used against him. The Court held that a disciplinary hearing is a civil action and that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a *party to a civil cause.*' " *Id.* at 318, 96 S.Ct. at 1558, *quoting,* 8 J. Wigmore, *Evidence* § 2272(e), p. 439 (McNaughton rev. 1961) (Emphasis in original). The Court, however, noted that an "inmate's silence in and of itself is insufficient to support an adverse decision by the Disciplinary Board." *Id.* at 317, 96 S.Ct. at 1557. Although Justice Brennan dissented from the majority opinion in *Baxter,* he agreed that:

> In a civil suit involving only private parties, no party brings to the battle the awesome powers of the government, and therefore to permit an adverse inference to be drawn from exercise of the privilege does not implicate the policy considerations underlying the privilege.

*Id.* at 335, 96 S.Ct. at 1566.

> In evaluating *Baxter,* one commentator writes:
> Hence, the majority and dissenting opinions in *Baxter* establish that an invoking in a civil case may constitutionally lead to an adverse inference against the invoker and may be the subject of comment by opposing counsel. As

long as the invoking and any attendant inference do not constitute the sole basis for the judgment against the invoker, no constitutional objection is warranted. Whether the Constitution would permit the granting of a default judgment against a defendant for his invoking in a civil case, however, is less clear.

Heidt, The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases, 91 *Yale L.J.* 1062, 1113 (1982). In *Lefkowitz v. Cunningham*, 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137, n. 5, 53 L.Ed.2d 1 (1977), the Supreme Court described its ruling in *Baxter.*

*Baxter* did no more than permit an inference to be drawn in a civil case from a party's refusal to testify. Respondent's silence in *Baxter* was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted....

*Baxter* suggests that three criteria must be met before the Court will permit an inference to be drawn against a person exercising his privilege against self incrimination. They are:

1. the action must be a civil action;
2. the party seeking to draw the inference must have established a *prima facie* case;
3. the person must be a party and not a mere witness.

Moxham, A Comment Upon the Effect of Exercise of One's Fifth Amendment Privilege in Civil Litigation, 12 *New England Law Review* 265, 267 (1976).

In *National Acceptance Co. of America v. Bathalter, supra,* 705 F.2d at 932, the Court of Appeals for the Seventh Circuit held "...in the light of *Baxter,* that even in a civil case a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage." The Court held that the trial court erred in concluding that the defendant's claim of the Fifth Amendment privilege in his answer to plaintiff's complaint constituted an admission to the allegations therein. The Court said:

The "cost" to a defendant of treating his claim of privilege in his answer as an admission is at least that plaintiff is excused from presenting proof of his averment and defendant is subjected without more, to an adverse judgment on that issue. We think *Baxter* indicates that this is too great a cost.

*Id.* at 931.

■ In the instant case, it would have been constitutionally permissible under *Baxter* for the trial judge to have allowed appellee to read the requests for admissions to the jury. The court should then have instructed the jury that appellant objected to answering these requests relying on his constitutional privilege against self-incrimination and that they may, but need not, draw an adverse inference from appellant's assertion of his privilege that his answers to the requests would have been adverse to his interests.[10] *See Cokely v. Cokely,* 469 So.2d 635, 637 (Ala.Civ.App. 1985); *Chaffin, Inc. v. Wallain,* 689 P.2d 684, 688 (Colo. App.1984); *Asplin v. Mueller,* 687 P.2d 1329, 1331 (Colo. App.1984).

"But if a party is free to shield himself with the privilege during discovery, while having the full benefit of his testimony at trial, the whole process of discovery could be seriously hampered." 8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2018 Supp. at 63 (1970, 1988 Supp.). (Footnote omitted.) Judge Hinkel was therefore correct in ruling that appellant should be precluded from testifying at trial as to the matters raised in appellee's request for admissions.

In *Schwaber v. Schwaber,* Circuit Court No. 2 of Baltimore City, *The Daily Record,* January 29, 1968, the late Judge J. Gilbert Prendergast addressed a similar issue. In

---

**10.** One court instructed the jury in a civil case that "a witness ha[s] a constitutional right to decline to answer on the ground that it may tend to incriminate him. However, you may, but need not, infer by such refusal that the answers would have been adverse to the witness' interest." *Brink's Inc. v. City of New York,* 717 F.2d 700, 707 (2nd Cir.1983).

*Schwaber,* the wife sought a divorce on the grounds of adultery. At his pre-trial deposition, the husband refused to answer any questions on the ground that such answers would tend to incriminate him. Judge Prendergast opined:

> ...The issue presented involves the consequences which the invocation of a privilege produces. The wife's counsel insists that the court should enter a decree *pro confesso* against him or at least strike out that portion of his answer in which he submitted an unverified denial of the charge of adultery. Defendant husband contends that the only sanction which can be invoked is that the husband may not hereafter testify at the trial of this case as to his alleged adultery. This court agrees with the latter contention.

> . . . . .

> For the reasons cited, the court rules that the defendant-husband had a constitutional right to refuse to answer questions pertaining to his adultery, but that he cannot hereafter testify as to any matters touching on the charge of adultery which the wife had made. The court cannot strike his pleading or enter a decree *pro confesso* against him because of his refusal to answer the questions put to him in his deposition, nor can he be precluded from offering the testimony of any other persons to rebut the charge of adultery.

 We adopt this reasoning and hold that when a defendant in a civil action pleads his privilege against self-incrimination in response to discovery requests, he is prohibited from testifying at trial on matters pertaining to these requests. *See Meyer v. Second Judicial District Court, Etc.,* 95 Nev. 176, 591 P.2d 259, 263 (1979); *A & M Records, Inc. v. Heilman,* 75 Cal.App.3d 554, 566, 142 Cal.Rptr. 390 (1977); *Costanza v. Costanza,* 66 N.J. 63, 328 A.2d 230, 232 (1974). He is not precluded, however, from producing independent witnesses to prove any defenses raised if he complies with the appropriate discovery rules.

In the instant case, appellant did not so comply. As mentioned, *supra*, appellant asserted his privilege in response to appellee's interrogatory requesting the names of people with personal knowledge of any facts material to this case. While he is free to assert his privilege, appellant cannot use this privilege as a means to hide witnesses until trial. Allowing any witnesses to testify on appellant's behalf would have been an unfair surprise to the appellee. The trial judge is vested with a large measure of discretion in applying sanctions for failure to adhere to the discovery rules. *Klein v. Weiss*, 284 Md. 36, 56, 395 A.2d 126 (1978). We hold that Judge Hinkel did not abuse that discretion in refusing to permit appellant's father to testify in appellant's defense.

Because of the erroneous characterization of appellant's objection to the request for admissions on the ground of self-incrimination, we shall vacate the judgments for compensatory and punitive damages and remand the case for a new trial on damages alone. We will not, however, disturb the court's determination that appellant is liable to appellee for the reasons we explain in answering appellant's second contention.

2.

■ When a motion for judgment pursuant to Rule 2–519 is made in a jury trial, the court must view the evidence and all inferences fairly deducible therefrom in the light most favorable to the party against whom the motion is made. The motion may only be granted when the evidence, so viewed, permits only one conclusion to be drawn therefrom. *Impala Platinum Limited v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 327, 389 A.2d 887 (1978). The properly admitted uncontroverted evidence in the instant case established, as a matter of law, that appellant had breached his duty to deliver money to the appellee which he had collected as appellee's agent and trustee. It further established that appellant had misappropriated those collections made on appellee's behalf. Under these circumstances the trial court properly granted appellee's motion for judgment at

the close of all the evidence on appellee's claims of breach of contract and conversion. The improperly admitted evidence of appellant's "admissions" did not detract in any way from the evidence properly before the court or the issue of appellee's liability to appellant. As to that issue, the improper admission of that evidence was harmless. *Harris v. Harris*, 310 Md. 310, 319–20, 529 A.2d 356 (1987); *Smith v. Warbasse*, 71 Md.App. 625, 634–35, 526 A.2d 991 (1987).

### 3.

■ Appellant properly asserts that proof of actual malice is a prerequisite to the recovery of punitive damages where the plaintiff is suing for a tort which arose out of a contractual relationship. *Miller Building Supply v. Rosen,* 305 Md. 341, 348, 503 A.2d 1344 (1986); *H & R Block, Inc. v. Testerman,* 275 Md. 36, 47, 338 A.2d 48 (1975); *New Summit Associates v. Nistle,* 73 Md.App. 351, 364, 533 A.2d 1350 (1987). He is incorrect, however, in his contention that there was insufficient evidence of actual malice to submit to the jury.

Actual (or express) malice has been described as "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *H & R Block, Inc. v. Testerman, supra,* 275 Md. at 43, 338 A.2d 48. There was ample evidence that appellant's conversion of appellee's funds was without legal justification or excuse, done with an evil motive with the purpose of deliberately and willfully injuring appellee.

### 4.

Finally, we find absolutely no merit in appellant's assertion that appellee's amended complaint was "duplicitous." As we noted at the outset, appellant pleaded alternative claims of breach of contract and conversion. Such alternative presentation of claims is expressly permitted by Rule 2–303(c).

JUDGMENT FOR COMPENSATORY AND PUNITIVE
DAMAGES VACATED, CASE REMANDED FOR NEW
TRIAL AS TO DAMAGES ONLY.

COSTS TO BE PAID THREE–FOURTHS BY APPEL-
LANT AND ONE–FOURTH BY APPELLEE.