**BLUE CIRCLE ATLANTIC, INC.**

v.

**FALCON MATERIALS, INC., et al.**

**Civ. No. S 88–3036.**

United States District Court, D. Maryland.

Jan. 25, 1991.

On Motion In Limine March 26, 1991.

George Beall, Richard E. Dunne, III, Hogan & Hartson, Baltimore, Md., Robert T. Rifverman, Jennifer W. Fletcher, Harry L. Griffin, Jr., Griffin, Cochrane, Marshall & Elger, Atlanta, Ga., for plaintiff.

David Barmak, Mark S. Carlin, Douglas Fierberg, Washington, D.C., Sherman, Meehan & Curtin, PC, Rockville, Md. (Harry Ryan, Arlington, Va.), for defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a diversity case that started out as a zephyr of a collection matter for cement sold and delivered, and that freshened to a whole gale when the defendants filed a counter-claim for the torts of fraud and negligent misrepresentation, seeking compensatory and punitive damages, and also asserting a claim for breach of warranty, seeking, *inter alia*, lost profits. These claims are all rooted in the defendants' allegations that misrepresentations about the quality of the product, expected and/or actual, were made to them either before the plaintiff purchased the plant which produced the cement defendants had been purchasing for years or during the course of performance by the plaintiff, as plaintiff sold the cement to defendants. The defendants claim that the cement was of poor quality, having been made with too much "weathered clinker," which adversely affected its physical properties, making it unfit.

The plaintiff moved for partial summary judgment on the counterclaims, essentially seeking to have them narrowed to a single warranty claim for which money damages are not an appropriate remedy. The motion was orally argued before the judge to whom the case was then assigned. Upon its transfer to the undersigned, I familiar-

ized myself with all relevant pleadings, motions, and briefs on file and read the draft transcript of the oral argument. No further oral argument is needed.

■ The Court first addresses the counterclaim for negligent misrepresentation. This judge fully agrees with the views expressed by Judge Motz of this Court in *Flow Industries, Inc. v. Fields Construction Co.*, 683 F.Supp. 527 (D.Md.1988), to the effect that, in Maryland, the distinction between actions *ex delicto* and those *ex contractu* has not been obliterated, *see Heckrotte v. Riddle*, 224 Md. 591, 168 A.2d 879 (1961), and that, accordingly, a claim of negligent misrepresentation causing economic loss in the course of a commercial transaction or relationship, at least where the parties are merchants, *see* MD. COM.LAW CODE ANN. (U.C.C.) § 2–104(1) (1975), ought not be entertained. *Flow Industries* has been cited with approval by the Court of Special Appeals of Maryland in *Boatel Industries v. Hester*, 77 Md.App. 284, 307, 550 A.2d 389 (1988), and I believe it would be adopted as the appropriate rule by the Court of Appeals of Maryland. Consequently, summary judgment will be entered for plaintiff on the claim of negligent misrepresentation, Count III of the amended counterclaim.

■ The counterclaim also seeks to assert a claim for fraud. Although not within the express holding of Judge Motz's decision in *Flow Industries, supra*, a good argument can be made for keeping intact the line between contract and fraud for misrepresentations about product quality, at least in commercial transactions involving sophisticated merchants. Certainly, there are situations where fraud can arise in the inception or performance of a contract for sale under Maryland law, *see, e.g., Fowler v. Benton*, 229 Md. 571, 185 A.2d 344 (1962) (home buyer deceived as to septic system), but where representations relating to product quality are involved, as between sophisticated buyers and sellers, the law of contract, which, unlike the law of tort, eschews ideas of moral blameworthiness and punitive recoveries, ought to furnish the exclusive remedy. That having

been said, this Court cannot say with certainty that the Court of Appeals of Maryland would agree (although the express endorsement of *Flow Industries* by the Court of Special Appeals in *Boatel* bodes well for such agreement eventually), and, therefore, this Court will assume that the law of Maryland would not exclude recovery for fraud on the facts pleaded in Count II of the amended counterclaim.

■ Turning to the claim for fraud arising from the first category of allegedly fraudulent statements of the plaintiff to defendants, *viz.*, that after its acquisition of the plant, the quality of the cement it would ship to defendants would be as good as that which had previously been produced at the plant before plaintiff's takeover, the Court is of the opinion that the defendants' fraud claim, predicated on this representation, could not survive if the case were at the directed verdict stage, taking into account that the required standard of proof for the commission of fraud in Maryland is clear and convincing evidence. *See Everett v. Baltimore Gas & Electric Co.*, 307 Md. 286, 513 A.2d 882 (1986) (as to the standard of proof). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (as to federal summary judgment standards). The defendants have failed to point, as *Celotex* required them to do in their opposition, to any specific evidence justifying a reasonable factfinder in concluding, by clear and convincing evidence, that this representation as to future quality of the goods was known by plaintiff to be false when it was made, in the sense that it did not intend to produce cement during the course of performance that was of even quality with that produced when the plant was under previous ownership. The evidence to which defendants point in this connection, *viz.*, certain early quality control reports, is far too tenuous to provide a reasonable basis for finding deceit by clear and convincing evidence.

■ Turning to the remainder of the allegedly fraudulent representations, *viz.*, those made about the quality of the ce-

ment, complaints from other customers, and so forth, during the course of performance, the Court is of the opinion that no claim of fraud has been made out that could survive directed verdict, for want of proof that the defendants suffered damages in relying upon their belief of the misrepresentations allegedly made by plaintiff. In order to recover for fraud, the claimant must prove rightful reliance upon the misrepresentation, in the full belief in its truth, which directly caused actual damages to the claimant. *See, e.g., Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 439 A.2d 534 (1982). The Court is not quite as sure as the plaintiff that the decision in *Everett v. Baltimore Gas & Electric Co., supra,* holds that each of the elements of fraud must be proved by clear and convincing evidence, but even assuming that a preponderance standard applies to the rightful reliance and damages element in this case, there is no evidence from which a reasonable fact-finder could conclude that reliance leading directly to damages had been proved, were the case at the directed verdict stage. This is evident from the deposition testimony of defendants' key officers, Messrs. Gwaltney and Morauer, Jr., to the effect that they simply could not switch to an alternative supplier because no manufacturer other than plaintiff could fill their needs for cement. Thus, whatever loss might have been suffered by defendants was on account of the poor quality of the cement and is compensable, if at all, under the U.C.C.; the loss was not occasioned by defendants' rightful reliance upon the allegedly deceitful representations in their full belief in the truth thereof. The defendants' use of the plaintiff's product after defects had come to defendants' attention, while the defendants were actively disputing with plaintiff about the quality of the product, and while the alleged misrepresentations were being made, which use is said to have been the source of their actual damages, cannot be shown on this record to have been occasioned by false assurances of product quality emanating from plaintiff. Rather, given the deposition testimony, the losses came from the fact that there was simply no other source

that could fill defendants' need for cement during the relevant period, and defendants had no commercially viable alternative to continued use of the cement, and it is that continued use which, defendants allege, led to the drop-off in their business as customers lost confidence in them. In short, this record, even if defendants could prove deceitful representations of quality during the course of performance, would not support a verdict for fraud, in view of the peculiar circumstance in which the supply situation vis-a-vis the defendants' need for cement put the parties during the period in question, thus making the fraud, if any there was, *damnum absque injuria,* for which nominal damages cannot be awarded under Maryland's requirement of proof of actual damage in fraud cases. *Martens Chevrolet, supra.* As stated in the venerable treatise *Prosser and Keeton on Torts,* § 110 (5th Ed.1984) at p. 765:

> Since the modern action of deceit is a descendant of the older action on the case, it carries over the requirement that the plaintiff must have suffered substantial damage before the cause of action can arise. Nominal damages are not awarded in deceit, and there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been. . . .

Here, although defendant might well have been damaged by the poor quality of the cement, that damage stemmed from defects in the product itself, not from representations as to its quality. Thus, defendants' counterclaim for fraud, Count II of the amended counterclaim, will be the subject of a grant of summary judgment for the plaintiff.

■ Although elimination of the fraud and misrepresentation claims makes it unnecessary so to expressly hold, the Court would point out that there is no sufficient evidence of actual malice, as defined by the Maryland courts to comprehend an evil or rancorous motive influenced by hate, *see e.g., Kramer v. Levitt,* 79 Md.App. 575, 558 A.2d 760 (1989), to sustain an award of punitive damages for any tort committed during the course of the contractual rela-

tionship, nor, assuming the 1985 representation to have induced defendants' entry into the contract, is there sufficient evidence of implied malice, in the sense that the representation as to future quality was made with reckless disregard as to its truth or falsity, to sustain an award of punitive damages. Thus, even if the tort counterclaims had survived summary judgment, the Court would have stricken the prayers for punitive damages.

■ Turning next to the *ex contractu* aspects of the plaintiff's motion, the Court finds that there are genuine material disputes of fact precluding summary judgment on the issue that plaintiff's invoices disclaimed or limited its liability for breach of warranty to replacement of defective cement. There is some question: as to whether, under all the facts and circumstances, the disclaimer became part of the parties' contract under U.C.C. § 2–207; as to whether, if it did, it would be unconscionable to enforce it, U.C.C. § 2–302; and as to whether, if the limitation of remedy did become part of the contract, its enforcement would be precluded by the failure of its essential purpose in light of the facts actually obtaining, U.C.C. § 2–719(2), given the supply situation adverted to in the Court's discussion of the reliance/damage issue of the fraud counterclaim, *ante*.

■ As to damages from breach of warranty, U.C.C. § 2–714(2) provides that the damages recoverable for breach of warranty are, at a minimum, the difference in value of the product as delivered and as warranted. But § 2–714(2) also allows recovery of consequential damages in a proper case under § 2–715(2)(a), relating to losses flowing from general or particular needs of the buyer of which the seller, at the time of contracting, had reason to know and which could not be prevented by cover or otherwise. As the discussion of the supply situation *ante* concludes, cover was apparently impracticable for this buyer. The question of whether the seller had sufficient reason to know of the buyer's requirements to charge it with liability for lost profits presents issues of fact that cannot properly be resolved on this summa-

ry judgment record. *See* U.C.C. § 2–715, Official Comment 2. Likewise, Official Comment 4 to § 2–715, referring to U.C.C. § 1–106 on liberality of remedies and the burden of showing loss, indicates that there are disputed questions of fact as to the recoverability of the lost profits claimed by the defendants. It might, depending upon the evidence at trial, be "reasonable under the circumstances" to adopt defendants' expert's theory of lost profit calculation and causation. The Court rejects plaintiff's comparison of defendants' established business with speculative start-up ventures, for which lost profit recovery has traditionally been denied on grounds that it is too speculative. Defendants were long-established in the business when the events here in dispute occurred, and the Court will not grant summary judgment on the lost profits issue *ex contractu*.

■ Next, the Court disagrees with plaintiff's assertion that, if the product was in fact defective, defendants had no right to set off their damages against the purchase price. In fact, U.C.C. § 2–717, depending upon the facts proved at trial as to proper notification to the seller under that statute, could give the buyer a right to set off damages against the purchase price, without the formalities of common law rescission.

■ Finally, of course, no punitive damages can be recovered for breach of warranty under U.C.C. § 1–106(1).

For the reasons stated, an order will be entered separately, granting the plaintiff's motion in part, and denying it in part, *i.e.*, granting summary judgment only as to Counts II and III of the amended counterclaim, and otherwise denying the motion, in accordance with this Opinion.

## ON MOTIONS IN LIMINE

Presently before the Court are three motions *in limine*. Each will be considered in turn, and no hearing is necessary. Local Rule 105, subd. 6, D.Md. Because these matters involve motions going both to the principal claim and the counterclaim, in the interest of avoiding confusion, the parties

will be referred to in their roles (plaintiff or defendant) as to the principal claim, not the counterclaim.

■ First, Falcon Materials, Inc. and Concrete Supply & Service Corporation seek to exclude evidence of a *lack* of complaints regarding the quality of Blue Circle's cement. Evidence of a lack of complaints is inadmissible in this case, because its probative value, if any, is far outweighed by the prejudicial effect of such evidence. *Wilson v. Clancy*, 747 F.Supp. 1154 (D.Md.1990). Contrary to the assertion of Blue Circle, *Banko v. Continental Motors Corp.*, 373 F.2d 314 (4th Cir.1966), does not require a different result. *Banko* held that the rule excluding absence of complaints does not apply in a non-jury trial. In the present case, the proffered evidence throws no reliable light on the quality of the cement in question, and, therefore, the motion will be granted.

■ Plaintiff Blue Circle Atlantic, Inc., has filed two motions *in limine*. In the motion dated March 15, 1991, plaintiff moves to exclude three categories of evidence. First, plaintiff argues that certain interoffice memoranda are inadmissible under Rule 408 of the Federal Rules of Evidence. Rule 408 provides as follows:

Compromise and Offers to Compromise

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Rule 408 does not apply to internal memoranda unless communicated to the other side in an attempt at settlement. *See* 23 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5303 (1980). All of the memoranda at issue were internal evaluations and apparently were not sent to the defendants. These items were not offers of settlement or compromise, and accordingly, Rule 408 does not apply.

■ While Rule 408 does not bar this evidence, problems remain with certain passages in these memoranda. The slight probative value of these passages is far outweighed by the prejudicial effect that they would have on the jury. Pursuant to Rule 403, these documents must be redacted, as follows, if they are to be introduced by defendants in evidence at trial:

1. Exhibit C to Plaintiff's Motion *in Limine*, dated April 4, 1988, must be redacted to eliminate paragraph 10 on page 2.

2. Regarding Exhibit D of Plaintiff's Motion, the word "SETTLEMENT" must be redacted from page 1, and all of page 2 must be removed.

3. The memorandum discussed at page 8 of Plaintiff's Brief in Support of Motion *in Limine* is not attached as an exhibit, but as described the memorandum at issue states "[a]s we have discussed, we must reach some compromise that will allow him to keep his credibility even though his argument has no merit." Plaintiff's Brief in Support of Motion *in Limine* at 8. This sentence must be redacted from the memorandum, if it is to be introduced at trial by defendants.

As to the second category of evidence, plaintiff contends that Rule 407 excludes certain documents. Rule 407 provides as follows:

Subsequent Remedial Measures

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or

culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

None of the three documents attached to the plaintiff's motion constitutes evidence of subsequent remedial measures, and therefore none is rendered inadmissible under Rule 407. Evidence of any *actual* subsequent remedial measures, though, such as those made to the Ravena Mill, as described in ¶ 4, on page 14 of plaintiff's brief in support of its motion, will be barred.

■ Plaintiff additionally moves to exclude evidence of complaints made by others about the quality of its cement. Under Rules 401 and 402, alleged defects of other batches of cement shed no light on the alleged defects in the cement at issue in this case. Even if this evidence were relevant, the ancillary question generated, as to the similarity between the cement at issue and the cement involved in the other buyers' complaints, is too confusing and a waste of time. Accordingly, plaintiff's motion to exclude evidence of complaints will be granted. Fed.R.Evid. 403.

■ Plaintiff's second motion *in limine*, dated March 16, 1991, addresses the admissibility of certain evidence regarding defendants' counterclaim for damages. Plaintiff seeks to exclude evidence that the defendants suffered a "loss of going concern value" when the defendants sold their assets in 1990. Defendants contend, in essence, that their claims for breach of warranty for defective cement, based on cement received in 1986, allow them to show evidence that they suffered a $3,000,000 loss in the value of their business when it was sold in 1990.

■ Maryland courts have not specifically addressed the issue of the foreseeability of damages as recovery for a breach of warranty under the U.C.C. for the loss of value when a business is sold, and thus this Court must forecast Maryland law on the point. *See Wilson v. Ford Motor Compa-*

*ny,* 656 F.2d 960 (4th Cir.1981). Section 2–715 of the Maryland Commercial Law Code adopts U.C.C. § 2–715 *in haec verba* regarding consequential damages. Under the U.C.C., consequential damages are allowed if the seller, at the time of the sale, knew or had reason to know of the consequences of a breach. *Hadley v. Baxendale,* 156 Eng.Rep. 145 (Ex.1854). *See* J. White & R. Summers, *Uniform Commercial Code* (3d Ed.1988) at pp. 444–46.

The plaintiff's motion will be granted, for two reasons. First, it is not reasonably foreseeable, absent an extraordinary amount of special knowledge communicated to the seller at the time of contracting, that a defective product will cause loss of value to the buyer's business when the buyer's business is sold some four years later. *See id.* at p. 446 n. 21. Such damages are simply not, in the ordinary course of things, reasonably foreseeable. Secondly, and more significantly, these damages are far too speculative, in that there are hosts of factors contributing to the amount someone will pay for a business at any point in time, and to bring this whole issue before the jury would invite rank speculation. Even the minimal certainty of damages required under Maryland Commercial Law Code § 2–715 cannot be shown in this case.

In conclusion, an order will be entered, separately, as follows:

1. Granting defendants' motion to exclude lack of complaints evidence;

2. Granting in part and denying in part plaintiff's Motion dated March 15, 1991, as follows:

a) As to the internal memoranda, the motion will be denied, except, the motion will be granted as to the following three documents, which must be redacted as indicated:

i. Exhibit C to Plaintiff's Motion *in Limine*, dated April 4, 1988, must be redacted to eliminate paragraph 10 on page 2;

ii. Exhibit D of Plaintiff's Motion must be redacted to remove the word "SETTLEMENT" from page 1, and all of page 2 must be removed; and

iii. The memorandum discussed at page 8 of Plaintiff's Brief in Support of Motion *in Limine* must be redacted to remove the sentence "[a]s we have discussed, we must reach some compromise that will allow him to keep his credibility even though his argument has no merit."

b) As to the evidence of alleged remedial measures, the motion will be denied, except it will be granted to exclude evidence of subsequent remedial measures made to the Ravena Mill, as described in ¶ 4, on page 14 of plaintiff's brief in support of its motion.

c) Regarding plaintiff's motion to exclude evidence of other buyers' complaints regarding plaintiff's cement, the motion will be granted.

3. Granting plaintiff's motion dated March 16, 1991.