785 A.2d 818

**Timothy LONG,**

v.

**Joan LONG.**

**No. 1844, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Nov. 29, 2001.

Timothy Long, Chesapeake Beach (William H. Thrush, Jr. and Scott, Whelton & Thrush, on the brief), Laurel, for appellant.

Neal J. Meiselman (Nogah B. Helfant and Haspel & Meiselman, Chartered, on the brief), Rockville, for appellee.

Argued before JAMES R. EYLER, THEODORE G. BLOOM (Ret., specially assigned), and RAYMOND G. THIEME, Jr., (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

This case requires us to review an award of alimony, child support, and attorney's fees pendente lite. For reasons that follow, we shall vacate the award and remand for further proceedings.

Appellant, Timothy Long, and appellee, Joan Long, were married on April 6, 1979, and separated in October 1998.[1]

---

1. Appellant testified that the parties separated in December 1997, but the master found that the parties separated in October 1998.

The parties have three children, one of whom is a minor with attention deficit disorder.

On February 7, 2000, appellee filed a complaint in the Circuit Court for Montgomery County, seeking an absolute divorce and other relief. On March 14, 2000, appellant filed an answer and counterclaim, seeking an absolute divorce and other relief. On May 9, 2000, a hearing was held before the master on appellee's claim for pendente lite alimony, child support, and attorney's fees. On the same date, the master issued a recommendation that (1) appellee's request for alimony pendente lite be denied, (2) appellee's request for attorney's fees be denied, and (3) appellee be awarded pendente lite child support in the amount of $900 per month.

Appellee filed exceptions to the recommendations. On August 10, 2000, the court held a hearing on the exceptions. The court found that appellant had voluntarily impoverished himself and/or failed to disclose the full amount of his income, attributed income to him in the amount of $93,000 per year, and by order dated August 17, 2000, held that appellant shall pay appellee (1) alimony pendente lite in the amount of $840 per month, (2) child support pendente lite in the amount of $1086 per month, and (3) attorney's fees pendente lite in the amount of $1,500.

On August 18, 2000, appellant filed a "motion to alter or amend and motion to revise" pursuant to Maryland Rules 2–534 and 2–535. On September 28, 2000, the court denied the motions without a hearing.

During the marriage, appellee worked primarily in the home and appellant worked primarily outside of the home. After the separation, the minor child of the parties resided with appellee. From 1979 until March, 1997, appellant worked for Sonco Worldwide, Inc., a fencing business owned by his father. In March, 1997, because of marital and other difficulties, appellant resigned from his job, and the parties moved to Florida for a fresh start. Appellant testified that he sold his stock in the business for $133,000, payable over a three-year period. Appellant opened a business in Florida, Seagate Sales

and Marketing, but it failed. Appellant then sought another job and received two offers. One offer was to work for a company in Tampa, Florida at an annual salary of approximately $50,000, and the other offer was to work for American Supply and Installation, located in Maryland, at an annual salary of $40,000, plus 5 to 10 percent commission on sales. Appellant accepted the job in Maryland and worked there until July, 1999, when the employer terminated his employment. In August, 1999, appellant was employed by Fencecenter.com, an entity affiliated with Sonco Worldwide.

During the evidentiary proceeding, appellant, when asked if he had filed tax returns for the years 1998 and 1999, refused to answer and invoked the Fifth Amendment privilege against self-incrimination. We shall refer to additional facts in our discussion of the issues.

## Questions Presented

Appellant presents the following questions, as rephrased and reordered by us:

1. Did the circuit court draw an impermissible inference from appellant's invocation of his Fifth Amendment privilege against self-incrimination?

2. Did the circuit court err in concluding that appellant had voluntarily impoverished himself and in determining the amount of income imputed to appellant?

3. Did the circuit court abuse its discretion in awarding attorney's fees to appellee?

4. Did the circuit court abuse its discretion in denying appellant's motion to alter or amend or revise without a hearing?

## Discussion

### 1.

In rendering its decision, the circuit court stated:

Certainly one of the proper inferences that the court can draw from the defendant's invocation of the Fifth Amend-

ment is that he did not file his tax returns for 1998 and 1999. The master made that inference.

However, in this court's opinion, a broader inference is warranted because in this case the defendant not only asserted his Fifth Amendment privilege but he also failed to produce any other probative evidence of what his income really is and as a result, the court finds that the defendant's invocation of his Fifth Amendment privilege has opened the door for the court to also infer that the reason that he has not disclosed tax returns for the said years was to keep the full amount of his full income from being disclosed.

Now in this case the issues of voluntary impoverishment and the negative inferences drawn from the Fifth Amendment privilege are clearly closely linked. The evidence supports the conclusion that the defendant voluntary (sic) impoverished himself with the help of his employer by deliberately reducing his income.

Appellant contends that the circuit court could permissibly infer from the invocation of the Fifth Amendment that appellant had not filed his 1998 and 1999 tax returns, but that the court could draw no other inference. Appellee contends that a broader inference is permissible and also argues that there was other evidence to support the court's determination of voluntary impoverishment and imputed income in the amount of $93,000 per year.

The Fifth Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, permits parties to avoid compelled self-incrimination. *See Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021 (1979). When a party chooses to invoke his or her Fifth Amendment rights in a criminal trial, the silence cannot be used against that party. *See Malloy,* 378 U.S. at 8, 84 S.Ct. 1489. As the U.S. Supreme Court explained in *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), however, "the prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil

actions when they refuse to testify in response to probative evidence offered against them." *Id.* at 318, 96 S.Ct. 1551 (citing John Henry Wigmore, *Wigmore on Evidence* vol. 8, § 2272, 439 (McNaughton rev.1961)).

In *Baxter*, prison inmates claimed their Fifth Amendment rights were violated at disciplinary hearings. One of the questions before the Supreme Court was whether the State was permitted to draw an adverse inference from the inmates' refusal to testify. *See Baxter*, 425 U.S. at 316, 96 S.Ct. 1551. In ruling that an adverse inference was permitted in civil cases, the Supreme Court clarified the extent to which an inference could be drawn by stating that the inmate was "advised that his silence could be used against him, but a prison inmate ... electing to remain silent during his disciplinary hearing, as respondent Palmigiano did here, is not in consequence of his silence automatically found guilty of the infraction with which he has been charged." *Id.* at 317, 96 S.Ct. 1551. Because the State relied on additional evidence in its case against the inmate, as opposed to merely the inmate's silence, the Court found the inmate's Fifth Amendment rights had not been violated: "as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case. This does not smack of an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege." *Id.* at 318, 96 S.Ct. 1551.

In *Whitaker v. Prince George's County*, 307 Md. 368, 514 A.2d 4 (1986), the Court of Appeals expressly adopted the rule in *Baxter*. The factual question in *Whitaker* was whether certain buildings were being used as houses of prostitution, and when one of the alleged prostitutes was questioned on the matter, she refused to answer, citing the Fifth Amendment privilege against self-incrimination. Regarding what the fact-finder could infer from her silence, the court opined, "the [Fifth Amendment] privilege does not forbid the drawing of adverse inferences against parties to civil actions when they refuse to testify." *Id.* at 386, 514 A.2d 4. The court further explained that while the alleged prostitute's silence alone could

not support a finding that the building in question was being run as a house of prostitution, the adverse inference drawn from her silence "may be coupled and considered with proper and relevant evidence tending to prove such fact." *Id.* at 386, 514 A.2d 4.

In *Robinson v. Robinson,* 328 Md. 507, 615 A.2d 1190 (1992), the Court of Appeals permitted an adverse inference to be drawn from Ms. Robinson's invocation of her Fifth Amendment rights regarding her allegedly adulterous behavior. In that case, Mr. Robinson claimed that the negative inference which could be drawn from Ms. Robinson's refusal to answer questions regarding her adultery established not only her commission of adultery, but also her unfitness as a parent. *Id.* at 516, 615 A.2d 1190. The Court of Appeals held that the proper inference produced by Ms. Robinson's silence was that Ms. Robinson had committed adultery. In a footnote, the Court said, "the adverse party's refusal, taken alone, does not relieve a party of his or her burden of proof on the issue which was the subject of the question." *Id.* at n. 2 (citing *Whitaker v. Prince George's County,* 307 Md. 368, 386, 514 A.2d 4 (1986)).

Utilizing similar reasoning, this Court, in *Kramer v. Levitt,* 79 Md.App. 575, 558 A.2d 760 (1989), held that it was not permissible for a trial court to deem admitted those requests for admission neither admitted nor denied by a party. *See Kramer,* 79 Md.App. at 584, 558 A.2d 760. We explained that because Kramer, the appellant in the case, invoked his Fifth Amendment rights, the trial court should have allowed the requests for admission to be read to the jury and "should then have instructed the jury that appellant [Kramer] objected to answering these requests relying on his constitutional privilege against self-incrimination and that they may, but need not, draw an adverse inference from appellant's assertion of his privilege that his answers to the requests would have been adverse to his interests." [2] *Id.* at 587, 558 A.2d 760. Addi-

---

2. In *Kramer,* we cited several cases from various jurisdictions that also permitted, but did not require, a jury to draw an adverse inference from

tionally, this Court reiterated the holding in *Baxter* and *Whitaker* that a party's privileged silence alone is insufficient to permit a fact-finder in a civil case to determine liability. *Id.* at 585–88, 558 A.2d 760.

In the case *sub judice*, the trial court was entitled to draw an adverse inference against appellant when appellant invoked the Fifth Amendment in response to questions about the status of his 1998 and 1999 tax returns. The trial court could not "penalize the exercise of the privilege," however. *Baxter*, 425 U.S. at 318, 96 S.Ct. 1551. A court may not find voluntary impoverishment based solely on an inference from exercise of the Fifth Amendment privilege without supporting evidence.

Similarly, a court may not find, based on such an inference, that an individual, including appellant, sought to "keep the full amount of his full income from being disclosed" without supporting evidence. Lastly, a court, based on such an inference, may not find a specific amount of imputed or undisclosed actual income without supporting evidence.

Later in its opinion, the circuit court continued:

Essentially, the defendant works for his father now as he did before when he made $90,000.00 or I believe somewhere there was also the testimony of $93,000.00 per year.

The court also infers that the defendant is receiving unreported income inasmuch as he hasn't filed his tax returns for 1998 and 1999 and the court will impute income to the defendant in the amount of $93,000.00 a year.

The analysis in this case is difficult because it is not clear whether the circuit court found that appellant voluntarily reduced his income to avoid his obligations or that appellant intentionally concealed the amount of income he actually

---

a party's invocation of the Fifth Amendment in a civil suit. *See Brink's Inc. v. City of New York*, 717 F.2d 700, 707 (2d Cir.1983); *Cokely v. Cokely*, 469 So.2d 635, 637 (Ala.Civ.App.1985); *Chaffin, Inc. v. Wallain*, 689 P.2d 684, 688–89 (Colo.App.1984); *Asplin v. Mueller*, 687 P.2d 1329, 1331 (Colo.App.1984).

earned. It is also unclear what the court inferred by virtue of invocation of the Fifth Amendment and what the court concluded from evidence. At one point, the court "infer[red]" that the reason appellant had not "disclosed" tax returns for 1998 and 1999 was "to keep the full amount of his full income from being disclosed." At another point, the court stated that appellant had deliberately reduced his income. If the latter statement was an inference based on invocation of the Fifth Amendment, it is inconsistent with the trial court's first inference that appellant had failed to disclose the full amount of income received by him.

Analysis is further complicated by the court's reference to lack of disclosure as distinguished from the failure to file tax returns. There is no issue before us with respect to lack of disclosure other than what is implicit in the failure to file the 1998 and 1999 tax returns. If not filed, they could not be produced, although non-filing does not necessarily mean they are not in existence. As will be discussed later, there was evidence introduced at the hearing pertaining to appellant's income for periods of time subsequent to 1997. At the very least, therefore, there was no complete lack of disclosure. Appellee, in her brief, states, "[t]here is no disputing that the appellant failed and refused to respond to subpoena or discovery requests with respect to documents pertaining to his income." There is no citation to the record, and there is nothing before us with respect to discovery issues. In light of the above, we have no choice but to vacate the award and remand for further proceedings.

## 2.

█ Appellant contends that the circuit court erred in finding that he had voluntarily impoverished himself and in imputing $93,000 per year income to him. In 1993, this Court ruled that "a parent shall be considered 'voluntarily impoverished' whenever the parent [or spouse] has made the free and conscious choice, not compelled by factors beyond his or her control, to render himself or herself without adequate resources." *Goldberger v. Goldberger,* 96 Md.App. 313, 327, 624

A.2d 1328 (1993). The intent in question is whether the parent or spouse intentionally became impoverished, for any reason, as opposed to whether the parent or spouse became impoverished with the intent of avoiding support payments. *See Wills v. Jones,* 340 Md. 480, 494–95, 667 A.2d 331 (1995).

In *John O. v. Jane O.,* 90 Md.App. 406, 601 A.2d 149 (1992), this Court stated that, in deciding whether voluntary impoverishment exists, a trial court should consider:

(1) his or her current physical condition;

(2) his or her respective level of education;

(3) the timing of any change in employment or other financial circumstances relative to the divorce proceedings;

(4) the relationship between the parties prior to the initiation of divorce proceedings;

(5) his or her efforts to find and retain employment;

(6) his or her efforts to secure retraining if that is needed;

(7) whether he or she has ever withheld support;

(8) his or her past work history;

(9) the area in which the parties live and the status of the job market there; and

(10) any other considerations presented by either party. *John O.,* 90 Md.App. at 422, 601 A.2d 149. We have cautioned, however, that, "[a]lthough the factors must be considered by the trial court, the statute does not require the court to articulate on the record its consideration of each and every factor...." *Dunlap v. Fiorenza,* 128 Md.App. 357, 364, 738 A.2d 312 (1999) (citing *Lapides v. Lapides,* 50 Md.App. 248, 252, 437 A.2d 251 (1981)). Contrary to appellant's assertion, therefore, mere lack of an explicit discussion of each of the factors on the record by the trial court does not necessarily mean that the trial court erred in concluding that appellant was voluntarily impoverished.

Once the court concludes that a parent or spouse is voluntarily impoverished, the court must ascertain that person's potential income. *See Wills,* 340 Md. at 490, 667 A.2d

331; *Goldberger,* 96 Md.App. at 327, 624 A.2d 1328. The trial court's factual findings on the issue of voluntary impoverishment are reviewed under a clearly erroneous standard, and the court's ultimate rulings under an abuse of discretion standard. *See Reuter v. Reuter,* 102 Md.App. 212, 221, 649 A.2d 24 (1994).

Given the discussion with respect to the Fifth Amendment issue, it follows that the circuit court may have utilized an impermissible inference in finding voluntary impoverishment, if indeed that was the finding. It is not clear whether the court found (1) voluntary impoverishment based on evidence without drawing an impermissible inference, and imputed income in the amount of $93,000 per year, (2) voluntary impoverishment based on an impermissible inference, (3) that appellant was earning $93,000 per year based on evidence, or (4) that appellant was earning $93,000 per year based on an impermissible inference. In any case, we cannot discern the basis for the amount.

Evidence at the hearing included a 1997 joint tax return. That return revealed total income in the amount of $97,563 in 1996 and $93,013 in 1997. Appellee asserts that the total income was earned by appellant and further asserts that it was all ordinary income and there was no stock buyout as asserted by appellant. For purposes of this discussion, we shall assume that to be true.

The 1997 return shows wages in the amount of $76,362, Sonco royalties in the amount of $11,268, and $3172 from Sonco Properties, a partnership. Appellant's 1999 W–2s indicate gross income in 1999 in the approximate amount of $68,000. The evidence also contains appellant's bank account statements from April 1999 through March 2000. Appellant estimated his income at $52,000 per year. The statements arguably reflect more than a $52,000 annual income, but it is impossible to determine actual income from those statements without knowing the rate of withholding as compared to the amount of taxes actually paid for 1999 and 2000.

Appellant, as an attachment to his motion to alter, amend, or revise, produced what purported to be tax returns for the years 1998 and 1999. Those returns reflected approximately $53,000 in income for 1998 and $71,000 in income for 1999. Whether we consider only the evidence at the hearing or, in addition, the attachments to appellant's motion, it is possible to conclude that appellant was earning income in excess of $52,000 per year or to impute income in an amount greater than $52,000 per year, but we cannot discern the basis for the amount of $93,000.[3] As a result, the award must be vacated. On remand, the court should explain how it arrived at its conclusion.

### 3.

Appellant contends that the circuit court erred in awarding attorney's fees without making required findings and without supporting evidence. There are no statements or other documentation in the record, but we need not decide whether the award, standing alone, was error. In light of our earlier ruling, and the fact that the award of attorney's fees is related to the other issues, we shall vacate the award. On remand, the court can again consider the issue of attorney's fees.

### 4.

Appellant contends that the circuit court erred in denying his motion to alter, amend, or revise. In light of our ruling with respect to the earlier issues, there is no need to address this motion. On remand, the circuit court, in its discretion, may receive additional evidence.

**PENDENTE LITE ORDER DATED AUGUST 17, 2000 VACATED. COSTS TO BE PAID BY APPELLEE.**

---

**3.** We do not mean to suggest that the court cannot consider appellant's history of earnings in imputing an amount of income.