## INSURANCE COMPANIES *v.* WEIDES.

1. A statement in figures of the value of certain merchandise destroyed by fire, which statement professed to be a copy of another and original statement contained in a book—itself destroyed in the fire—accompanied by proof that on a certain day the witnesses took a correct inventory of the merchandise and that it was correctly reduced to writing by one of them and entered in the volume burnt, and that what is offered is a correct copy, may, on a suit against insurers, be received in evidence to fix the value of the merchandise burnt, even though there be no *independent* recollection by the witnesses affirming to the correctness of the original statement of what they found the value of the merchandise to be.

2. Under a policy one of whose conditions is that in case of loss the assured, after furnishing evidence of his loss, shall submit to an examination

---

under oath, and until such examination should be permitted no loss should be paid, *Held* that the insurers could not, as a condition of re-covery, compel the assured to answer questions as to the sum per cent. of claim for which he had settled with other parties insuring him.

3. Under a policy one of whose conditions is that in case of loss the assured should produce "*certified copies*" of all bills and invoices, the originals of which had been lost, and exhibit the same for examination to any person named by the insurers, and that until the proofs, declarations, and certificates were produced and examinations and appraisals per-mitted the loss should not be payable—*Held*, in the absence of proof *when* the insured was requested to produce duplicate bills of purchase—whether before the commencement of the action *or* afterwards, and of proof whether there was neglect or refusal of the insured to comply—that the insurers, even though they gave proof tending to show that the insured were requested to produce *duplicates* of invoices, could not prop-erly ask an instruction that if the jury believed the assured were re-quested by the insurers to produce "*duplicates*" of invoices of goods purchased by them, the originals of which were alleged by them to be destroyed, and neglected to do so before the commencement of the ac-tion, no right to recover existed.

4. Under a policy one of whose conditions is that fraud or false swearing on the part of the assured in an examination which, by the terms of the policy, he was bound to submit to on a claim by him for loss, it is only fraudulent false swearing in furnishing the preliminary proofs or in the examination which avoids the policy; and whether there has been *such* false swearing is a matter for the jury to determine.

ERROR to the Circuit Court for the District of Minnesota; the case being this:

C. & J. R. Weide insured in four different companies a stock of goods which they had; all the policies being alike, and each containing clauses thus:

"In case of loss the assured shall forthwith give notice of said loss to the companies, and as soon after as possible render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving the actual cash value of the prop-erty, their interest therein, for what purpose and by whom the building insured, or containing the property insured, and the several parts thereof, were used; when and how the fire origin-ated; and shall also produce a certificate, under the hand and seal of a magistrate, . . . nearest to the place of the fire, stating that he has examined the circumstances attending the loss,

knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured, to the amount which such magistrate shall certify; and the *assured shall, if required, submit to an examination under oath, by any person appointed by the companies*, and subscribe to such examination when reduced to writing; and shall also produce their books of account and other vouchers of all property hereby insured, whether damaged or not damaged; and shall also produce *certified copies* of all bills and invoices, the originals of which have been lost, and exhibit the same for examination by any one named by the company. . . . All fraud, or attempt at fraud, or *false swearing* on the part of the assured, shall cause a forfeiture of all claim under this policy."

A fire having occurred and the goods insured having been burnt, the Weides sued the companies on the policies. On the trial it became material to prove what was the quantity and value of the goods which the plaintiffs had when the fire occurred. As bearing upon this, evidence was introduced, without objection, tending to show that the plaintiffs took a correct inventory of their stock on the 28th of February, 1866, which was correctly reduced to writing by one of them in an inventory book; that the prices or values were correctly footed up therein; that at the same-time the footings were correctly entered by one of the plaintiffs upon the fly-leaf of an exhausted ledger, and afterwards transferred also by one of the plaintiffs to the fly-leaf of a new ledger; that neither of the plaintiffs could remember the amount of such inventory or footings, and that both the inventory book and the exhausted ledger had been destroyed. The plaintiffs then offered the entry of the footings upon the fly-leaf of the new ledger, which the court, in the face of objection by the other side, received.

The reception of this evidence made the first exception.

The plaintiffs then offered in evidence " the said first item on the debit side in their present ledger of said merchandise account therein," which the court received under objection; and afterwards " the said merchandise account in said ledger

contained," received in like manner. The reception of these two items of evidence made the second and third exceptions.

There being evidence tending to show that the real loss of the plaintiffs was far less than the total amount of insurance made by the companies sued, and that certain other insurance companies had made insurance on the plaintiffs' stock of merchandise; and also that the plaintiffs had made certain settlements at the rate of 54 cents on a dollar with certain of the said other insurance companies; and that on an examination of the plaintiffs before this action was commenced under oath, required by the defendant of the plaintiffs, under the already quoted conditions of the policies, the plaintiffs disclosed the fact that they had made such settlements, but on such examination refused to answer questions put to them by the defendant as to *the amounts for which they made such settlements;* the companies' defendant requested the court to instruct the jury thus:

" If the jury shall believe that the plaintiffs, or either of them, in the course of an examination on oath, under the policy, refused to answer any questions by which defendant could fairly estimate or reasonably infer the plaintiffs' real loss in the insured property, and have not before the commencement of this action answered the said questions under oath, then the jury must find for the defendant."

Which instruction the court refused to give; this refusal being the subject of a fourth exception.

There being also evidence tending to show that the plaintiffs were requested to produce *duplicate bills of purchases,* the defendant moved the court to instruct the jury as follows:

" If the jury believe from the evidence, that the plaintiffs were requested by the defendants to produce *duplicates of invoices of goods* purchased by them, the originals of which were alleged by them to be destroyed, and neglected to do so before the commencement of this action, their right of action never accrued, and the jury must find for the defendant."

Which instruction the court refused to give; this refusal being the matter of the fifth exception.

So to the testimony of the plaintiffs tending to show material discrepancy from material statements made by them in their proofs of loss and their examination on oath under the policy, the defendant moved the court, as his. fourth prayer, to instruct the jury as follows:

"If the jury shall believe that the plaintiffs testifying on this trial have made statements materially differing from statements knowingly made under oath in their proofs of loss, whether in their particular account made to the defendant, or any examination on oath submitted to by them, under the terms of the policy, this is false swearing, and the jury must find for the defendant."

Which instruction the court refused to give.

In the examination on oath made by the plaintiffs under the policy, the plaintiffs having stated their outstanding debts to be between $18,000 and $20,000, and having stated in evidence before the jury that their indebtedness did not exceed $8000 at the time of the fire, and there being evidence tending to show that plaintiffs knowingly made the statement in their examination on oath, and subscribed and made oath to the same, the defendant moved the court, as a fifth prayer, to instruct the jury as follows:

"In their examinations under the policy, plaintiffs seem to have sworn that the outstanding debts of their firm amounted to between $18,000 and $20,000 at the time of the fire. In their testimony here they state positively that their indebtedness did not exceed $8000 at that time. If the jury shall believe that they knowingly made the statement set forth in their examination on oath and subscribed and made oath to the same, the jury must find for the defendants."

Which motion or request the court refused to give; their refusal of these fourth and fifth prayers making a sixth and seventh exception.

The reception of the evidence of the footings on the fly-leaf of the new ledger and the refusals to charge as requested were the matters assigned for error.

There were two other errors assigned arising from a refusal by the court to lay down as rules of law a certain rule

for the jury to pursue, in computing the amount of stock from certain data. But the counsel of the companies in this court, while asserting that the rule was undoubtedly correct arithmetically, candidly admitted that it could not be stated as a rule of law to be laid down by the court. The requests, therefore, need not be stated.

Messrs. *J. M. Carlisle* and *J. D. McPherson*, for the plaintiffs in error; Messrs. *W. H. Peckham* and *Lorenzo Allis*, contra.

Mr. Justice STRONG delivered the opinion of the court.

It is contended in the first place, that there was error in the court's receiving the entry of the footings upon the fly-leaf of the new ledger. It will be observed that the footings upon the fly-leaf of the ledger were not offered or received as independent evidence. They were accompanied by proof that they were correct statements of the values of the merchandise, and that they were correctly transcribed either from the inventory book or from the fly-leaf of the exhausted ledger, both of which appear to have been originals. How far papers, not evidence *per se*, but proved to have been true statements of fact, at the time they were made, are admissible in connection with the testimony of a witness who made them, has been a frequent subject of inquiry, and it has many times been decided that they are to be received. And why should they not be? Quantities and values are retained in the memory with great difficulty. If at the time when an entry of aggregate quantities or values was made, the witness knew it was correct, it is hard to see why it is not at least as reliable as is the memory of the witness. It is true a copy of a copy is not generally receivable, for the reason that it is not the best evidence. A copy of the original is less likely to contain mistakes, for there is more or less danger of variance with every new transcription. For that reason even a sworn copy of a copy is not admissible when the original can be produced. But in this case the inventory book and the fly-leaf of the exhausted ledger

had both been burned. There was no better evidence in existence than the footings in the new ledger. And we do not understand the bill of exceptions as showing those footings to have been copied from a copy. It does not appear whether they were taken from the inventory book or from the fly-leaf of the old ledger. And it is of little importance, for as those entries were made at the same time, neither ought to be regarded as a copy of the other, but rather both should be considered originals. We do not, however, propose to discuss this exception at length, for we regard it as settled by the decision in *Insurance Company* v. *Weide*,* that the evidence under the circumstances was properly received.

The second and third exceptions are disposed of by what we have already said, and they are unsustained.

There is nothing also in the fourth exception. By the policies the assured after furnishing proofs of loss were bound, if required, to submit to an examination under oath, and it was stipulated that until such examination should be permitted the loss should not be payable. Of course it is to be understood that the examination contemplated relates to matters pertinent to the loss. In these cases the plaintiffs did submit to an examination, but declined to answer questions respecting the amounts for which they had made settlements with other insuring companies. We are unable to perceive that the questions' proposed had any legitimate bearing upon the inquiry, what was the actual loss sustained in consequence of the fire. If the plaintiffs had claims upon other insurers, and compromised with some of them for less than the sums insured, it is not a just inference that their claim against these insurers was exaggerated. A compromise proposed or accepted is not evidence of an admission of the amount of the debt. There was then no sufficient foundation laid for the instruction requested by the defendants, that if the jury should believe that the plaintiffs, or either of them, in the course of an examination on oath, under the policies, refused to answer any questions by which

---

* 9 Wallace, 677.

the defendants could fairly estimate, or reasonably infer plaintiffs' real loss in the insured property, and had not before the commencement of the actions answered the questions under oath, the verdict must be for the defendants. There was no evidence of refusal to answer *such* questions.

The fifth exception is to the refusal of the court to instruct the jury that if they believed from the evidence the plaintiffs were requested by the defendants to produce duplicates of invoices of goods purchased by them, the originals of which were alleged by them to be destroyed, and neglected to do so before the commencement of the actions, their right of action never accrued, and that the verdicts must be for the defendants. The prayer for this instruction was founded on the clause in the policy that the assured should produce certified copies of all bills and invoices, the originals of which had been lost, and exhibit the same for examination to any person named by the company, and that until the proofs, declarations, and certificates (stipulated for in case of loss) were produced and examinations and appraisals permitted, the loss should not be payable. The bills of exception state that there was evidence tending to show that the plaintiffs were requested to produce duplicate bills of purchases, but there does not appear to have been any evidence when the request was made, whether before the commencement of the actions or afterwards, or whether there was neglect or refusal of the plaintiffs to comply. Moreover, the request was for duplicates, and not for certified copies. We cannot, therefore, say there was error in refusing the instruction asked for.

Nor was there error in denying the defendants' third and fourth prayers. It is true the policies stipulated that fraud or false swearing on the part of the assured should work a forfeiture of all claim under them. The false swearing referred to is such as may be in the submission of preliminary proofs of loss, or in the examination to which the assured agreed to submit. But it does not inevitably follow from the fact that there was a material discrepancy between the statements made by the plaintiffs under oath in their proofs

of loss, and their statements when testifying at the trial that the former were false, so as to justify the court in assuming it, and directing verdicts for the defendants.   It may have been the testimony last given that was not true, or the statements made in the proofs of loss may have been honestly made, though subsequently discovered to, be mistaken.   It is only fraudulent false swearing in furnishing the preliminary proofs, or in the examinations which the insurers have a right to require, that avoids. the policies, and it was for the jury to determine whether that swearing was false and fraudulent. .

The remaining two assignments of error are not pressed, and it is properly conceded that the court could not lay down as a rule of law the mode of computation designated in the prayers for instruction.

JUDGMENT AFFIRMED.