## No. 8664.

### A. ERMAN VS. SUN MUTUAL INSURANCE COMPANY.

<div style="float:right; border:1px solid;">35 1095<br>109 524</div>

A discrepancy, even if it be material, between the statements of the assured under oath in his proof of loss, and those made at the trial, does not constitute the false swearing that works a forfeiture of all claim under a policy of insurance ; nor does an over-statement of the value of the property work such forfeiture, for a great difference of opinion upon values may well co-exist with perfect honesty of all the persons differing. The assured may have sworn to what he believes to be true, but which nevertheless is false, and his policy would not thereby be forfeited. To work such forfeiture, the assured must knowingly and intentionally, and therefore fraudulently have sworn with the intent to deceive the in-surer and get from him a value falsely put upon the property.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Braughn, Buck & Dinkelspiel* for Plaintiff and Appellant :

1. If there is a discrepancy between the statement of loss and the statement testified to at the trial, it does not thereby follow that the claimant has been guilty of fraud or false swearing, for the statements made in the proof of loss may have been honestly, though erroneously made.  14 Wal. 375 ; 3 Bis. 106 ; 4 Daly, 96 ; 43 Barber, 400 ; 50 Ill. 120.
2. Swearing must not only be false, but it must be wilfully and knowingly done, with intent to cheat the Company.  43 Pa. 350.

*Leovy & Kruttschnitt* for Defendant and Appellee.

The opinion of the Court was delivered by

MANNING, J.  The suit is for the recovery of $1,437.57, alleged damage to a stock of goods and house at Morgan City, occasioned by fire on April 2, 1881.  Besides the general issue, the defendant pleads in bar the forfeiture of all claim under the policy by reason of fraud and false swearing.

The false swearing that works a forfeiture of all claims under a policy of insurance is not a discrepancy, even if it be material, between the statements of the assured under oath in his proof of loss, and those made at the trial ; nor an over-statement of the value of the property, for a great difference of opinion upon values may well co-exist with perfect honesty of all persons differing.  The assured may have sworn to what he believed to be true, but which nevertheless was false, and his policy would not thereby be forfeited.  He must knowingly and intentionally, and therefore fraudulently have sworn, with the intent to deceive the insurer and get from him a value falsely put upon the property.  May on Insurance, § 477 ; Ins. Co. vs. Werdes, 14 Wall. 382.

The policy was for $1,000 upon a wooden building and $3,000 upon the stock therein.  The damage sworn to is $75 to the building, and $1,362.57 to the goods.

The fire was extensive. Many buildings in the town were burnt to the ground, and others caught from flying sparks and burning shingles which a strong wind scattered hither and thither. The plaintiff's store thus caught fire. The dry roof ignited in several spots. Water was thrown upon it from buckets. The persons who ascended to the roof, and who were chiefly instrumental in extinguishing the flames, were witnesses at the trial. The plaintiff was very energetic in assisting also. The building was saved with difficulty. "The roof was rapidly burning in several places," said a witness; "the water thrown upon it ran down into the store and wet all the goods there, and a great deal of the stock was damaged in consequence." *Per contra*, the man sent down by the insurance company as adjuster disbelieved the leakage from above, and flatly charges Erman with having wetted the goods himself, and thinks $100 the maximum of damage.

There is not a particle of testimony to substantiate this theory. When a town is on fire and the flames are spreading, and men are running pell-mell to buildings threatened or aflame, and mounting upon ladder and parapet with buckets to hurl their contents athwart the roof, they do not throw the water as gently as if they were laving a lady's fingers. Against the theory that Erman wetted the goods on purpose to lay a claim for greater damage ought to be opposed his good character. Every one of his fellow townsmen who was examined was asked about his reputation for honesty and veracity, and they all concurred in saying it was as good as any man's in that community. They must be a bad lot if he, who is as good as the best of them, could do such a villainous act as the defendant's adjuster attributes to him. The proof of the plaintiff's good repute accumulated so fast that the defendant put a stop to further inquiry by putting on record the admission that his reputation for truth and veracity in the community in which he lives is good beyond doubt.

Yet it is argued that he has sworn falsely because he has three several times stated the sum now claimed is: 1, the amount of damages sustained by him; 2, the cost price of the goods damaged; 3, the value of the goods in their damaged state. Of course, that cannot be true, but it is apparent from the man's verbiage that he does not speak with accuracy and is not an adept in the use of our tongue. Other witnesses testify to the damage, and it would not be just to disbelieve the plaintiff entirely and fix upon him the stigma of deliberate perjury, because he cannot express himself with the lucidity and precision characteristic of the counsel who presses upon us this argument. His testimony does not read as if he were consciously falsifying. His blunders can be more justly attributed to other causes than that.

But he does say that the item of $630 for clothing is the full value of the goods, and the damage done to them is seventy-five per cent., and as the other items are lumped with that to make the sum sued for, the damage to each of them must be in the same proportion. He admits having sold $150 worth of the damaged goods. We state the figures thus:

Sum total of goods damaged....................................$1,362 57
Less 25 per cent...................................................   340 64

                                                                   $1,021 93
Sold..................................................................   150 00

                                                                   $  871 93
Add damage to building..........................................    75 00

                                                                   $  946 93
which we find as the amount of his damages.

Therefore it is ordered and decreed that the judgment of the lower court is avoided and reversed, and that the plaintiff do have and recover of the defendant the sum of nine hundred and forty-six dollars and ninety-three cents, with five per cent. per annum interest thereon from June 15, 1881, and the costs of both Courts.