848 A.2d 681

**William H. PHILLIPS**

v.

**ALLSTATE INDEMNITY COMPANY.**

**No. 491, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

May 5, 2004.

732

Maximillian F. Van Orden, Bowie, for appellant.

Jeffrey L. Harding (Sasscer, Clagett & Bucher, on the brief), Upper Marlboro, for appellee.

Panel: KENNEY, GREENE,* CHARLES E. MOYLAN, JR. (Ret'd, specially assigned), JJ.

---

* Greene, J., now a member of the Court of Appeals of Maryland, participated in the conference and decision of this case while a member

KENNEY, Judge.

William H. Phillips ("Phillips") appeals from an order of the Circuit Court for Prince George's County granting summary judgment in favor of Allstate Indemnity Company ("Allstate"). On appeal, Phillips asks three questions, which we have consolidated into one:

Did the circuit court err as a matter of law in granting summary judgment in favor of Allstate?

For the reasons that follow, we shall remand the case to the circuit court for the entry of a declaratory judgment in conformity with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

The summary judgment motions, deposition testimony, and interrogatories provided the following information. On October 30, 2000, Phillips purchased a 2001 Yamaha motorcycle from Heyser Motorcycle in Laurel, Maryland for $12,054.66. Phillips obtained an insurance policy from Allstate that included protection against loss of the motorcycle. Sometime between the evening hours of November 8 and the morning hours of November 9, 2000, the motorcycle allegedly was stolen from a parking space in front of Phillips' apartment. On November 9, 2000, Phillips notified both the Montgomery County Police Department and Allstate of the theft.

On November 19, 2000, Phillips provided John Cadigan, an employee of Allstate, with a recorded statement. In the statement, Phillips stated that he worked at a car dealership trading as Royal Auto under the supervision of Mr. Poe and earned approximately $3,000 per month. He earned additional money by gambling in Atlantic City and "detailing" automobiles. His friend, Mike Stevens, had loaned him some of the money to purchase the motorcycle. When Allstate contacted Royal Auto to verify the information, it learned that Phillips

of this Court; and participated in the adoption of this opinion as a member of this Court by special designation.

was neither a current nor past employee and there was no supervisor by the name of Mr. Poe.

On November 24, 2000, Phillips completed an "Affidavit of Automobile Total Theft" form, as required by the policy. He answered four of the questions as follows:

4. Are you employed? No.

5. Are you retired? N/A

6. What type of work do you do? N/A

10. What type of business are you in? N/A

He signed the affidavit, attesting that he had read, answered, and understood all of the questions and that all of the information was true and correct.

Because of inconsistencies in the information provided by Phillips, Allstate requested that he submit to an examination under oath ("EUO"). At the EUO on January 11, 2001, Allstate's attorney did not ask Phillips any questions because, in prior discussions, Phillips' attorney had indicated that Phillips would not provide any information about his finances. When Phillips confirmed that he would not answer any financial questions, Allstate's attorney responded: "I'm not going to conduct the [EUO] because I feel that the refusal to answer those questions, for whatever reason, would be deemed by Allstate and myself as lack of cooperation in this claim, resulting in a denial."

Phillips' attorney stated:

Our position, given the particular and unique circumstances of this case, is, it would not be a lack of cooperation or a violation of the requirements of the policy.

The particular reason is that this motorcycle was paid for in cash. It's not the most typical, if there is such a thing, case, where there may be suspicion that because there had been arrearages in payments that someone is simply trying to have a vehicle disappear for purposes of getting out from underneath of a debt that they owe.

Therefore, the source of income for the payment of this motorcycle, in our position, is entirely irrelevant.

There's virtually no scenario that would suggest, in my perception of this, at least, that this would be a fraudulent claim, since the motorcycle's paid for in cash.

\* \* \*

In addition, this is a case where the motorcycle disappeared at the scene, it's not a collision type of circumstance. But he is willing—to be clear on the record, he is here and will be happy to testify regarding the circumstances of the last time he saw the motorcycle, what he had done with the motorcycle, how many miles he believes were on the motorcycle at the time.

\* \* \*

So, for those reasons, we believe that, in this particular case, exploring the financial component of his life is not relevant. . . . If you wanted to explore the circumstances of what he knows about the motorcycle and how it disappeared, that's fine, and we can do that, it wouldn't take that long to do it.

But, if you believe that by not answering the financial questions, that it defeats the purpose of this procedure, then that's certainly something that you can decide.

Allstate's attorney responded:

And, just to briefly respond to that, for the record, it is my opinion as the attorney conducting the EUO, that the financial background information, in any case, is highly relevant. Financial background often in these cases produces a motive or a lack thereof.

You are advising your client and you are making a conclusion that based on what you know, it's not relevant. And, I am not permitted to objectively make that conclusion without asking those questions. And those are questions that I ask in every examination that I've done.

And I think that the way I read the case law, that I'm allowed to do that because that is relevant, for example, it is perhaps motive to have the vehicle stolen. It might be a

motive that your client is charged with a crime, for example, and he needs money to pay for a lawyer.

So, there's any number of reasons that it is relevant. And I think I'm not permitted, in doing an objective investigation, to draw those conclusions that you've drawn for the record.

In a letter dated January 11, 2001, Allstate denied Phillips' claim, based on lack of cooperation.

On July 20, 2001, Phillips filed a complaint for breach of contract, which was amended in March 2003, adding an additional count for declaratory judgment. At a deposition on March 10, 2003, Phillips testified that, in the recorded statement, he had not provided truthful information about his employment and his friend, Mike Stevens. Phillips replied, "I plead the 5th Amendment," when asked the following questions concerning his income and expenses:

— How do you pay for college?

— How do you pay [your monthly rent]?

— How do you pay your monthly expenses?

— How do you pay your yearly premiums?

— What is your source of income?

— Where did you get the money to pay the premium [on your Cadillac Eldorado]?

— Where do you get the money to deposit into [your] checking account?

— Where did you get the money to pay the premium for that?

— How did you get the money to pay for [the motorcycle]?

— Why did you misrepresent the information [about your employment during the recorded statement]?

Allstate filed a motion for summary judgment, arguing that Phillips could not pursue a claim "after making material misrepresentations, failing to cooperate ... during an EUO, and refusing to answer relevant questions during discovery." With respect to the alleged failure to cooperate, Phillips

argued that: (1) he did not have a "duty" to provide the recorded statement; (2) he recanted the misrepresentations; (3) the misrepresentations were not material; (4) he "submitted" to the EUO, but was not required under the insurance policy to answer every question; and (5) there was no evidence that Allstate had been prejudiced. In essence, Phillips contended that he had substantially complied with his obligations under the insurance policy. At the conclusion of the motions hearing, and without explanation, the circuit court granted judgment for Allstate. This timely appeal followed.

## DECLARATORY JUDGMENT

Phillips filed a complaint for breach of contract, which was amended, adding an additional count for declaratory judgment. The circuit court granted summary judgment in favor of Allstate, but did not enter a declaratory judgment. Therefore, we must remand the case to the circuit court to enter a judgment declaring the rights of the parties not inconsistent with this opinion. We explain.

The Maryland Uniform Declaratory Judgments Act ("Act"), Md.Code (1974, 2002 Repl.Vol.), § 3–401 *et seq.* of the Courts & Judicial Proceedings Article ("CJ"), is "remedial" and its purpose is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." CJ § 3–402. The Act further provides:

Except for the District Court, a court of record within its jurisdiction may declare rights, status, and other legal relations whether or not further relief is or could be claimed. An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for.

CJ § 3–403(a).

When it will serve to terminate the uncertainty or controversy at issue, a court may grant a declaratory judgment if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

CJ § 3–409(a).

"The declaration may be affirmative or negative in form and effect and has the force and effect of a final judgment or decree." CJ § 3–411; *see Universal Underwriters Ins. Co. v. Lowe,* 135 Md.App. 122, 130–31, n. 6, 761 A.2d 997 (2000) (" 'While a declaratory decree need not be in any particular form, it must pass upon and adjudicate the issues raised in the proceeding, to the end that the rights of the parties are *clearly* delineated and the controversy terminated.' ") (quoting *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 29, 320 A.2d 266 (1974)). In a declaratory judgment action in which summary judgment was sought, we explained:

> Summary judgment is appropriate in a declaratory action, although it is " 'the exception rather than the rule.' " *Nationwide Mut. Ins. Co. v. Scherr,* 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied,* 337 Md. 214, 652 A.2d 670 (1995) (quoting *Loewenthal v. Security Ins. Co.,* 50 Md.App. 112, 117, 436 A.2d 493 (1981) (holding that in an action for declaratory judgment concerning the correct interpretation of an insurance contract, "summary judgment may be warranted where there is no dispute as to the terms of an insurance contract but only as to their meaning")).

*McBriety v. Commissioners of Cambridge,* 127 Md.App. 59, 65–66, 732 A.2d 296 (1999). Declaratory proceedings, however, are " 'not intended to and *should not serve as a substitute for appellate review or as a belated appeal.'* " *Wolfe v. Anne Arundel County,* 135 Md.App. 1, 25, 761 A.2d 935 (2000) (quoting *Fertitta v. Brown,* 252 Md. 594, 599–600, 251 A.2d 212 (1969) (emphasis in original)), *aff'd,* 374 Md. 20, 821 A.2d 52 (2003).

▉▉▉▉ "While it is permissible for trial courts to resolve matters of law by summary judgment in declaratory judgment actions, the trial court must still declare the rights of the parties." *Megonnell v. United Services Auto. Ass'n,* 368 Md. 633, 642, 796 A.2d 758 (2002). In *Harford Mut. Ins. Co. v. Woodfin Equities Corp.,* 344 Md. 399, 414, 687 A.2d 652 (1997) (internal citations omitted), the Court of Appeals stated:

> This Court has reiterated time after time that, when a declaratory judgment action is brought, and the controversy is appropriate for resolution by declaratory judgment, "the trial court must render a declaratory judgment." "[W]here a party requests a declaratory judgment, it is error for a trial court to dispose of the case simply with oral rulings and a grant of . . . judgment in favor of the prevailing party."

> The fact that the side which requested the declaratory judgment did not prevail in the circuit court does not render a written declaration of the parties' rights unnecessary. As this Court stated many years ago, "whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made."

Because the circuit court did not declare the rights of the parties, we shall remand this case to the circuit court to enter a judgment declaring the rights of the parties not inconsistent with this opinion. Nevertheless, we will address the merits of the controversy. *See Bushey v. Northern Assur. Co. of Am.,* 362 Md. 626, 651, 766 A.2d 598 (2001) (finding that the Court of Appeals "may, in its discretion, review the merits of the controversy and remand for the entry of an appropriate declaratory judgment by the circuit court"); *Maryland Ass'n of HMO's v. Health Servs. Cost Review Comm'n,* 356 Md. 581, 604, 741 A.2d 483 (1999) (requiring on remand that the circuit court enter a judgment which included a declaration of the rights of the parties). *But see Woodfin, supra,* 344 at 415, 687 A.2d 652 (remanding the case without reaching the merits of insurance policy coverage issues).

## DISCUSSION

Phillips argues that the circuit court erroneously granted summary judgment because: (1) he was entitled to invoke his Fifth Amendment privilege against self-incrimination during the deposition; (2) he did not fail to cooperate during the EUO and his alleged lack of cooperation did not result in actual prejudice to Allstate; and (3) the misrepresentations were not material.

## STANDARD OF REVIEW

We review a trial court's grant of summary judgment *de novo, Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18 (2003), determining whether the trial court was legally correct, *Williams v. Baltimore,* 359 Md. 101, 114, 753 A.2d 41 (2000) (internal citations omitted) (quoting *Baltimore Gas & Elec. Co. v. Lane,* 338 Md. 34, 42–43, 656 A.2d 307 (1995)). If the trial court does not state its reasons for granting the motion, we will affirm the judgment so long as the record "discloses it was correct in so doing." *Casey Development Corp. v. Montgomery County,* 212 Md. 138, 145, 129 A.2d 63 (1957).

We determine first, however, whether a genuine dispute of material fact exists, "and only where such dispute is absent will we proceed to review determinations of law." *Remsburg,* 376 Md. at 579, 831 A.2d 18. In so doing, "we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Remsburg,* 376 Md. at 579–80, 831 A.2d 18. If there is no "genuine dispute as to any material fact necessary to resolve the controversy as a matter of law, and it is shown that the movant is entitled to judgment, the entry of summary judgment is proper." *Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 8, 327 A.2d 502 (1974) (citing *Selected Risks Ins. Co. v. Willis,* 266 Md. 674, 296 A.2d 424 (1972)).

## The Insurance Policy

Phillips obtained an "Indemnity Motorcycle Insurance Policy" from Allstate. The policy contains general recitals and four separate "Parts" that address, respectively, liability insurance, medical payment coverage, uninsured motorists' insurance, and protection against loss. The general recitals provide that the policy "is a legal contract between you and us." The policy is effective only "during the policy period" and "applies to losses to the cycle, accidents and occurrences within the United States...." With respect to fraud or misrepresentation, Allstate does

> not provide coverage for any loss which occurs in connection with any material misrepresentation, fraud, or concealment of material facts, or if any material misrepresentation or omission was made on your insurance application.

"Part 4" of the policy, which is captioned "Protection Against Loss To The Motorcycle," provides: "Allstate will pay for direct and accidental loss to your insured cycle not caused by collision. Loss caused by ... theft ... is covered." In the event of a covered loss, the policy provides:

1. As soon as possible, any person making claim must give us written proof of loss. It must include all details reasonably required by us. We have the right to inspect the damaged property. We may require any person making claim to file with us a sworn proof of loss. We may also require that person to submit to examinations under oath.

2. Protect the cycle from further loss. We will pay reasonable expenses to guard against further loss. If you don't protect the cycle, further loss is not covered.

3. Report all theft losses promptly to the police.

No person "may sue [Allstate] under this coverage unless there is full compliance with all the policy terms."

## The Fifth Amendment

Invoking his Fifth Amendment privilege against self-incrimination, Phillips refused to answer ten questions during

the deposition. At the summary judgment hearing, Allstate argued that judgment was proper because Phillips' refusal prevented a full investigation into the alleged theft.

 The Fifth Amendment privilege against self-incrimination may be asserted by a party or witness in civil proceedings, "not only at trial, but at the discovery stage as well." *Kramer v. Levitt,* 79 Md.App. 575, 582, 558 A.2d 760 (1989). On the other hand, a party may not testify at trial about any matters in which the privilege was asserted. *Faith v. Keefer,* 127 Md.App. 706, 724, 736 A.2d 422 (1999). Moreover, a party may not " 'use this privilege as a means to hide witnesses [or other relevant evidence] until trial.' " *Id.* (quoting *Kramer,* 79 Md.App. at 589, 558 A.2d 760).

If information about his finances could have resulted in a criminal prosecution, Phillips was entitled to invoke his Fifth Amendment privilege against self-incrimination. Invocation of that privilege would not in itself provide the basis upon which summary judgment could be granted prior to trial.

## Cooperation and Actual Prejudice

Phillips argues that he did not fail to cooperate by refusing to answer questions about his finances during the EUO. In his view, the insurance policy only requires that he "submit" to an EUO; he is not required to answer every question. Phillips also contends that his alleged lack of cooperation did not result in actual prejudice to Allstate.

Allstate denied coverage because of Phillips' lack of cooperation arising from his refusal to answer questions about his finances during the EUO. Unlike the other "parts" of the policy at issue in this case, the section addressing coverage for theft of the motorcycle did not contain an express general cooperation clause, but, instead, required that an insured "must do" three things in the event of a loss, including "submit[ting] to examinations under oath." [1]

---

1. The three other "Parts" of the policy contain "Assistance and Cooperation" clauses that state, in part: "At our request, an insured person

■ We have not been directed to, nor have we found, any Maryland cases that discuss the scope of an EUO and whether an insured's failure to answer questions is a failure to cooperate when a policy does not contain an express cooperation clause.[2] Nevertheless, we are persuaded that, under the circumstances of this case, appellant's refusal to answer relevant, material questions during the required EUO was a breach of the insurance contract and, in effect, a failure to cooperate. Therefore, Allstate would be permitted to disclaim coverage without a showing of actual prejudice. We explain.

■ Generally, during an EUO, an insurer is "entitled to conduct a searching examination, though all questions should be confined to matters relevant and material to the loss." 13 Couch on Insurance § 196:11, p. 196–20 (3d ed.2003). An insured is not required to answer immaterial questions, and the materiality of a question "is determined in the context of the insured's claim and the insurer's investigation." *Id.* at 196–21. In a theft case, the insurer may ask questions "relating to possible motives for fraud, such as prior loss or claim history, and financial circumstances of the insureds." *Id.*

In *Powell v. United States Fid. & Guar. Co.*, 88 F.3d 271 (4th Cir.1996), the insureds' home was destroyed by fire. Under their homeowners' insurance policy, the insureds were required to "submit to questions under oath and sign and swear to them." *Powell*, 88 F.3d at 272. During the EUO, the insureds refused to answer several questions and "to turn over financial and other documents," claiming that an EUO did not permit the insurer to "delve into financial or other information relating to the [insureds'] possible motives to

---

will ... cooperate with us and assist us in any matter concerning a claim or suit...."

**2.** Maryland cases that address breaches arising out of a failure to cooperate are generally premised upon a cooperation clause in a policy. *See Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 363 Md. 106, 108, 767 A.2d 831 (2001); *Roussos v. Allstate Ins. Co.*, 104 Md.App. 80, 84, 655 A.2d 40 (1995).

intentionally set the fire ... but ... [was] instead limited ... to an examination relating to the existence and extent of loss under the policy." *Id.* The United States Court of Appeals for the Fourth Circuit disagreed, stating that an EUO "encompasses investigation into possible motives for suspected fraud." *Id.* at 273. The court cited 5A John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 3522, p. 561 (1970), which provided that an EUO "is not restricted to amount of loss, but the insurer has the right to examine the insured and his witnesses as to any matter material to the insurer's liability and the extent thereof." *Id.*

▮▮▮▮▮ The materiality of questions asked during an EUO has been addressed by the United States Supreme Court. In *Ins. Companies v. Weides*, 81 U.S. 375, 14 Wall. 375, 20 L.Ed. 894 (1872), the insureds submitted to an EUO, but refused to answer questions "respecting the amounts for which they had made settlements with other insuring companies." *Id.* at 381. At trial, the insurer requested that the trial court instruct the jury that if it believed that the insureds had refused to answer any questions "by which the [insurer] could fairly estimate or reasonably infer [the insureds'] real loss in the insured property," then the "verdict must be for" the insurer. *Id.* at 381–82. The Supreme Court found no error in the trial court's refusal to give the instruction, stating:

> Of course, it is to be understood that the examination contemplated relates to matters pertinent to the loss. In these cases, the [insureds] did submit to an examination, but declined to answer questions respecting the amounts for which they had made settlements with other insuring companies. We are unable to perceive that the questions proposed had any legitimate bearing upon the inquiry, what was the actual loss sustained in consequence of the fire. If the [insureds] had claims upon other insurers, and compromised with some of them for less than the sums insured, it is not a just inference that their claim against these insurers was exaggerated. A compromise proposed or accepted is not evidence of an admission of the amount of the debt.

*Id.* at 381. Thus, we conclude that the scope of an EUO properly includes questions that are relevant and material to an insurer's liability for a loss and the extent of that loss. An insured's failure to answer such questions constitutes a failure to comply with a policy requirement to submit to an EUO.

■ In this case, Phillips' motorcycle allegedly was stolen approximately ten days after it had been purchased. During a statement recorded by Allstate, Phillips lied about his employment and how he had acquired the money to purchase the motorcycle. Once Phillips put his financial circumstances in question, further questions related to his finances became material to a possible motive to submit a fraudulent claim. Although Phillips recanted the statements about his employment shortly thereafter, he refused to answer any questions at the EUO relating to his finances. This was sufficient to generate a concern that Phillips' claim might be fraudulent based on a need for money. Under these circumstances, questions relating to Phillips' financial circumstances clearly were relevant and material to possible motives for fraud, and his refusal to answer the questions violated the requirements of the policy and constituted a failure to cooperate.

Although materiality is generally a question of fact, we are persuaded that, under the circumstances of this case, it could be determined, as a matter of law, that the questions that Phillips refused to answer during the EUO were relevant and material. Because of Phillips' misrepresentations about his employment and method of paying for the motorcycle, coupled with the proximity in time between the purchase and the theft of the motorcycle, finances clearly were relevant. Moreover, because Phillips refused to answer *all* questions relating to his finances, this was not a case requiring a trier of fact to weigh the materiality of a particular question or questions. Under these circumstances, the issue may be resolved as a matter of law.

■ In the alternative, Phillips argues that even if he failed to cooperate, Allstate is not excused from coverage absent a showing of actual prejudice, as required by Md.Code

(1995, 2002 Repl.Vol.), § 19–110 of the Insurance Article ("Ins."). In Maryland, an insurer may not disclaim coverage on a liability insurance policy on the basis that an insured breached the policy by failing to cooperate or by not giving required notice, unless the insurer establishes that the breach resulted in actual prejudice. *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 363 Md. 106, 122, 767 A.2d 831 (2001). This concept has been codified at Ins. § 19–110, which provides:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured ... has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

In substance, Ins. § 19–110 "makes policy provisions requiring ... cooperation with the insurer covenants and not conditions." *St. Paul Fire & Marine Ins. Co. v. House,* 315 Md. 328, 332, 554 A.2d 404 (1989).

By its plain language, Ins. § 19–110 applies to a "liability insurance policy." A liability insurance policy is "generally issued for the benefit of third parties who are injured and have a claim against a tortfeasor." 7 Couch on Insurance § 104:8 (3d ed.2003). Indeed, in the Maryland cases that address Ins. § 19–110, the issue has been whether an insurer could disclaim coverage and not pay benefits to a third party when the insured either failed to cooperate or to give timely notice. *See Allstate, supra,* 363 Md. 106, 767 A.2d 831 (insurer excused from providing liability coverage in a case involving an automobile accident because insured failed to cooperate); *Sherwood Brands v. Hartford Accident & Indem. Co.,* 347 Md. 32, 698 A.2d 1078 (1997) (involving a liability insurance policy in an unfair and deceptive trade practices case); *St. Paul Fire & Marine Ins. Co., supra,* 315 Md. 328, 554 A.2d 404 (involving liability insurance in a medical malpractice case); *Home Indem. Co. v. Walker,* 260 Md. 684, 273 A.2d 429 (1971) (insurer not excused from coverage because it

failed to establish actual prejudice from insured's alleged failure to give timely notice of a suit arising out of an automobile accident); *Travelers Ins. Co. v. Godsey*, 260 Md. 669, 273 A.2d 431 (1971) (liability insurance policy in a case involving an automobile accident); *Warren v. Hardware Dealers Mut. Fire Ins. Co.*, 244 Md. 471, 224 A.2d 271 (1966) (declaratory judgment was premature in a motor tort case where insurer had not proven prejudice arising from insured's alleged lack of cooperation).

There was no third-party claim in this case. Therefore, Ins. § 19–110 was not applicable.

### Material Misrepresentations

 Under the policy, Allstate will not provide coverage for any loss "which occurs in connection with any material misrepresentation . . . of material facts. . . ." Phillips contends that the misrepresentations he made during the recorded statement were not material. Generally, whether a statement is false and material is a question of fact for the jury. *See Peoples Life Ins. Co. v. Jerrell*, 271 Md. 536, 538, 318 A.2d 519 (1974). When, however, the evidence is "clear and convincing or uncontradicted," a court may rule as a matter of law. *Id.*

It was undisputed that Phillips, in his recorded statement, lied about his employment and how he had acquired the money to purchase the motorcycle. Because of that information, Allstate suspected that Phillips may have submitted a fraudulent claim. The misrepresentations were clearly material in this case because, as we have discussed above, they related to the validity of Phillips' claim.

### CONCLUSION

In summary, Phillips' invocation of the 5th Amendment privilege against self incrimination would not in itself provide the grounds upon which summary judgment could be granted prior to trial. However, under the facts and circumstances of this case, Phillips' refusal to answer questions about his finan-

cial circumstances during the EUO violated the terms of the policy and constituted a failure to cooperate. The circuit court did not err by granting summary judgment, but a declaration of the rights of the parties is required.

**JUDGMENT AFFIRMED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR ENTRY OF JUDGMENT IN ACCORDANCE WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLANT.**