Dr. Gary WOMER, D.D.S., Plaintiff,

v.

ASSURANCE COMPANY OF AMERICA, t/a Zurich, U.S., Defendant.

Civil Action No. BPG–06–1643.

United States District Court, D. Maryland.

Feb. 4, 2008.

---

Gary Womer, Selbyville, DE, pro se.

George E. Reede, Jr., Niles Barton and Wilmer LLP, Baltimore, MD, for Defendant.

### MEMORANDUM AND ORDER

BETH P. GESNER, United States Magistrate Judge.

The above-referenced insurance coverage case has been referred to me for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). Plaintiff, Dr. Gary Womer ("plaintiff"), filed this action seeking insurance coverage for his professional dental offices, which sustained water damage in October of 2004. Plaintiff claims that this damage required significant repair work and interrupted his ability to provide dental services to his patients. After receiving a portion of his property damage claim, plaintiff brought the present suit alleging that defendant Assurance Company of America t/a Zurich, U.S. ("defendant") breached the insurance contract by failing to pay all sums due under the policy for business losses and remaining property damage. Currently pending are the defendant's Motion for Summary Judgment, plaintiff's Response in Opposition, and defendant's Reply (Paper Nos. 39, 40, 42). No hearing is deemed necessary. Local Rule 105.6. For the following reasons, defendant's motion is DENIED.

### I. Standard for Summary Judgment

Summary judgment must be granted if, after an adequate time for discovery, "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED. R.CIV.P. 56(c). A genuine issue remains if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the court views all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

Defendant asks the Court to grant summary judgment in its favor, maintaining that plaintiff cannot pursue a breach of contract claim, having breached the contract himself by failing to produce the financial records necessary to evaluate his claim, as was required by the insurance policy. For the reasons stated below, summary judgment for the defendant is not appropriate because there are genuine issues of material fact as to whether plaintiff complied with his obligations under the insurance policy.

### II. Factual Background

At all relevant times to the litigation, plaintiff had an insurance policy with de-

fendant, Policy No. PPS 36766013, which provided coverage to plaintiff's commercial property, namely his dental offices located in Denton, Maryland. (Paper No. 39, Mem. of Law at 2.) As a result of a broken water pipe on October 20, 2004, plaintiff suffered substantial water damage to his dental offices, including damage to hardwood floors and carpeting that resulted in mold infestation. (Paper No. 40 at 2.) Plaintiff promptly notified the insurer of the incident and submitted a claim for property damage. (Paper No. 39, Mem. of Law at 4.) In response, defendant paid plaintiff over $45,000 for emergency work, remediation, and repairs. *Id.* Plaintiff claims that this payment was approximately $25,000 short of the actual amount of the property damage, but defendant states that plaintiff provided no documentation to substantiate the purported shortfall. *Id.*

Plaintiff also notified defendant that he intended to file a claim for business income loss under his policy. (Paper No. 40 at 3.) In reference to that claim, defendant made requests for specific documentation to evaluate the loss. (Paper No. 39, Mem. of Law at 4.) In particular, defendant mailed a letter to plaintiff dated December 29, 2004, which listed nine specific document requests and gave the plaintiff a deadline to provide them within 120 days (*i.e.,* April 30, 2005). (Paper No. 39, Ex. B, Womer Dep., Attach. 4.) This request included routine business documents such as tax returns, payroll records, the rental contract for the premises, W–2 statements, profit/loss statements, and a copy of the then-pending sales agreement for plaintiff's dental practice. *Id.* On February 14, 2005, prior to the deadline noted previously, defendant sent plaintiff a nearly identical letter requesting documentation to support the business income claim and noted a due date in 90 days (*i.e.,* May 15, 2005).[1] (Paper No. 39, Ex. B, Womer Dep., Attach. 10.)

Over the next several months, there were numerous letters exchanged between the parties and their representatives regarding the fact that defendant had not received the requested documents. In a letter to plaintiff dated April 19, 2005, defendant's representative confirmed that "because [Zurich has] not received the material in regard to the loss of income claim [they are] closing [their] file on this." (Paper No. 39, Ex. B, Womer Dep., Attach. 11.) This letter was dated prior to either of the deadlines for producing documents set forth in defendant's previous letters. Thereafter, in a letter dated June 3, 2005, plaintiff's counsel indicated that plaintiff had produced a list of "cancelled patients and patients who had to be referred to other dentists," as well as expressed a willingness to "provide business documents kept in the ordinary course as they pertain to this loss and that will establish the loss." (Paper No. 39, Ex. B, Womer Dep., Attach. 5.) After the June 3rd letter, another full month passed; defendant responded in a letter dated July 6, 2005, again requesting documents. (Paper No. 39, Ex. B, Womer Dep., Attach. 6.) It appears at that point that defendant "reopened" its file and hired an accounting firm to investigate the claim. The accountant sent a letter to plaintiff's counsel on July 8, 2005. (Paper No. 39, Ex. B, Womer Dep., Attach. 7.) This letter asked questions about the extent of plaintiff's business income loss and requested similar documentation to evaluate plaintiff's claim as in previous requests,

---

1. Plaintiff alleges that the February letter "sought new and different information" from the December letter. (Paper No. 40 at 4.) The February letter, however, appears to be a copy of the December letter with very minor changes, including the catch-all request for other documents plaintiff would be relying on to support his claim.

but provided no deadline for production.[2] *Id.* Plaintiff filed suit on August 23, 2005. (Paper No. 39, Mem. of Law at 5.)

Plaintiff asserts that he attempted to comply with defendant's document requests by asking his longtime secretary to compile as many of the documents as she could in response to defendant's requests and believed that she did produce many of these documents prior to litigation. (Paper No. 39, Ex. B, Womer Dep. at 57–58, 90–92, 117.) At the time he filed suit, plaintiff concluded that defendant was "stonewalling" him in refusing to pay out the business interruption claim and remainder of the property damage claim. *Id.* at 78–79.

## III. *Discussion*

The insurance policy in this case provides in pertinent part:

### Common Policy Conditions

All Coverage Parts included in this policy are subject to the following conditions.

\*     \*     \*

C. Examination Of Your Books And Records

*We may examine and audit your books and records* as they relate to this policy at any time during the policy period and up to three years afterward.

### Commercial Property Conditions

The following conditions apply in addition to the Common Policy Conditions:

\*     \*     \*

1. In the event of loss or damage to Covered Property, you must:

\*     \*     \*

f. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and *examine your books and records.* Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and *permit us to make copies from your books and records. . . .*

### General Conditions

Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless . . . [t]here has been *full compliance* with all of the terms of this Coverage Part . . .

(Paper No. 39, Ex. A) (Emphasis added.)

■ Defendant seeks summary judgment on the grounds that plaintiff did not comply with the foregoing policy provisions by failing to submit documents requested by defendant. Defendant asserts that plaintiff made a conscious decision, after consultation with his counsel, to file suit rather than comply with terms of the insurance contract. As a result of this noncompliance, defendant maintains that plaintiff is barred from bringing a legal action against defendant. Plaintiff responds that he complied with the policy provisions by asking his secretary to produce records to defendant and that he thought she had done so. Further, of note, is the fact that plaintiff's counsel provided certain records to defendant and specifically offered to provide any other relevant documents. For the reasons stated below, there are genuine issues of material fact as to whether plaintiff fully complied with the requirements of the insurance policy.

■ "Provisions in insurance policies are to be interpreted like those of any other contract." *Hartford Fire Ins. Co. v. Himelfarb,* 355 Md. 671, 679, 736 A.2d 295, 300 (1999) (citing authority). Further, the

---

2. The accountant followed up with an nearly identical letter to plaintiff's counsel on September 1, 2005. (Paper No. 39, Ex. B, Womer Dep., Attach. 8.)

Court is "guided ... by the principle that the law does not favor forfeitures." *Id.* at 682, 736 A.2d at 302 (quoting authority). Defendant relies heavily on three cases in which summary judgment for the insurer was granted after the insured failed to comply with policy terms. *See Powell v. United States Fid. & Guar. Co.*, 88 F.3d 271, 274 (4th Cir.1996) (per curiam) (affirming summary judgment for the insurer under Virginia law where the insured refused to answer financial questions or to disclose financial documents during a required Examination Under Oath); *Phillips v. Allstate Indem. Co.*, 156 Md.App. 729, 747–48, 848 A.2d 681, 691–92 (2004) (affirming summary judgment for the insurer where the insured refused to answer questions about his finances at an Examination Under Oath required by the policy terms, claiming protection under the Fifth Amendment); *MDB Communications, Inc. v. Hartford Cas. Ins. Co.*, 479 F.Supp.2d 136, 146 (D.D.C.2007) (granting summary judgment for the insurer when the insured explicitly refused to submit additional documentation regarding restitution for the loss, in violation of the policy terms requiring a "signed, sworn statement of loss").

The cases cited by defendant are not instructive here because the insureds in those cases explicitly refused to provide certain information to the insurer. In each of those cases, the applicable policy language required the insured to produce documents either in the context of an Examination Under Oath or with a sworn statement of loss.[3] Defendant here does not rely on similar policy provisions. Rather, the policy language at issue in this case requires plaintiff to allow defendant to "examine," "audit," and "make copies of" plaintiff's records. The policy language here is far less explicit than the language in the cases relied upon by defendant. Moreover, there is no evidence in this case that plaintiff affirmatively refused to provide information.

In a case involving similar policy language, the United States District Court for the District of Oregon denied summary judgment for the insurer, rejecting an argument that the insured was barred from bringing suit because it breached the insurance contract by failing to produce requested materials. In *Pro–Cure, Inc. v. Farmers Ins. Exch.*, No. Civ. 03–6355–TC, 2004 WL 1383196, at *1 (D.Or. June 18, 2004),[4] the policy language at issue was similar to the policy here in that it provided as follows: "permit us to make copies from your books and records." *Id.* at *2. As in this case, the insurer in *Pro–Cure* paid a portion of a property damage claim but the insured sought coverage for additional property damage and for business interruption losses. *Id.* at *1. The insured provided certain information and, thereafter, the insurer's accountant requested additional information and expressed an interest in obtaining further information herself. The court concluded that, because the parties did not specify what the insured did or did not produce, it could not say as a matter of law that plaintiff refused to cooperate by filing suit. *Id.* at *3. The court noted that the decision to pursue litigation, while perhaps not the "optimal decision to make," reflected the plaintiff's frustration with the length of time for

---

**3.** For the relevant policy language in the cited cases, see *Powell,* 88 F.3d at 272; *Phillips,* 156 Md.App. at 741, 848 A.2d at 688; *MDB Communications,* 479 F.Supp.2d at 141–42.

**4.** The Findings and Recommendation of the United States Magistrate Judge were adopted in their entirety in *Pro–Cure, Inc. v. Farmer's Ins. Exch.*, No. Civ. 03–6355–TC, 2004 WL 1874963, at *1 (D.Or. Aug. 19, 2004).

processing the claim for which there seemed "no end in sight." *Id.*

Of note here, the *Pro–Cure* Court observed that the plain text of the policy required the plaintiff to "permit [Farmers] to . . . examine [plaintiff's] books and records," and that there was no evidence that the plaintiff ever refused the insurance company access to those records. *Id.* Thus, the court noted that it was unclear that the policy, including the cooperation clause, would have been breached "even if plaintiff failed to create and turn over detailed information in support of its claim at all." [5] *Id.*

Similarly, in this case, the Court cannot conclude as a matter of law that plaintiff did not fully comply with the policy. By letter of June 3, 2005, plaintiff's counsel affirmatively produced certain information to defendant and offered to provide other documents relevant to the loss. Further, plaintiff asserts that, prior to June 3rd, he relied upon his secretary to gather and produce the documents that defendant requested and did not learn that she failed to produce any documents until after he brought this action.[6] These acts alone generate factual issues as to whether plaintiff satisfied his obligation to allow defendant to "examine and audit [his] records" or to "make copies of [his] books and records." As noted above, this case does not involve the more expansive policy lan-

guage at issue in the cases relied upon by defendant. Nor does this case involve a clear refusal by plaintiff to comply with the policy provisions.

In fact, the course of conduct by the defendant in this case generated confusion as to exactly what defendant was asking of plaintiff and by what deadline plaintiff was to produce the requested documents. As detailed above, defendant sent plaintiff two separate letters requesting documents which had two separate deadlines for compliance, April 30, 2005 and May 15, 2005. On April 19, 2005, before either deadline to submit the requested documents had passed, defendant sent plaintiff a letter telling him defendant was closing its file. Following that letter and a letter to defendant from plaintiff's counsel on June 3, 2005, which provided some documents and offered to provide more, a full month passed before plaintiff heard anything from defendant. Finally on July 8, 2005, plaintiff received a letter for the first time from an accounting firm hired by defendant to investigate plaintiff's claims. The accounting firm sent additional requests for documentation to plaintiff's counsel but included no deadline.

Given all of these facts coupled with plaintiff's stated belief that defendant was "stonewalling" him, that his secretary had already produced the requested docu-

---

**5.** The *Pro–Cure* Court concluded that, to the extent the cooperation clause or any other provision of the policy implied that plaintiff should create records or provide information beyond the inspection obligation, it could not say that duty was not carried out. Here, the record clearly reflects an offer by plaintiff for full access to relevant records.

**6.** Neither party offered any applicable case law on the question of the insured's reliance on a third party to fulfill his obligations under the contract. Defendant argued that plaintiff is responsible for the tortious conduct of his employee while she was acting in the scope of

her employment. While a correct statement of law, the Court does not find this helpful on the question of plaintiff's compliance with the terms of the policy. Further, although defendant asserts that plaintiff knew no documents had been produced, plaintiff denies that. While the records reflect that plaintiff knew he had not produced documents to the satisfaction of defendant, there remains a dispute as to whether plaintiff knew he, through his secretary, apparently had not produced any documents prior to his attorney's letter of June 3, 2005.

ments, and that plaintiff's counsel produced some documents and offered to produce more, this Court cannot say that plaintiff's decision to initiate this action constituted a breach of the insurance contract as a matter of law. Rather, the record suggests that plaintiff and his counsel were understandably frustrated by their course of dealing with defendant and concluded that the best action was to file this lawsuit. There are genuine factual issues as to whether there has been "full compliance" by plaintiff with the policy language at issue here. Accordingly, plaintiff is not barred from maintaining this action as a matter of law.

## IV. *Conclusion*

For the foregoing reasons, it is HEREBY ORDERED this 4th day of February, 2008, that defendant's Motion for Summary Judgment (Paper No. 39) is DENIED.